**Laurence DAVIS, Appellant,**

v.

**Norman M. LITTELL, Appellee.**

**No. 21578.**

United States Court of Appeals
Ninth Circuit.

July 15, 1968.

Laurence Davis (argued), Washington, D. C., Dushoff, Sacks & Corcoran, Phoenix, Ariz., for appellant.

William H. Rehnquist (argued), of Powers & Rehnquist, Phoenix, Ariz., for appellee.

Before MERRILL and CARTER, Circuit Judges, and WEIGEL, District Judge.

MERRILL, Circuit Judge:

The question presented by this appeal is whether appellee, by virtue of his position as general counsel for the Navajo Tribe, was entitled to assert absolute privilege as to defamatory statements made by him within the scope of his official duties.

Suit was brought by appellant in the District Court for the District of Arizona, with jurisdiction founded on diversity of citizenship. Both parties are non-Indians who were employed by the Navajo Tribe at the time of the alleged defamation: appellee as general counsel, appellant as his assistant. Appellant alleges that due to appellee's defamatory statements to the Tribal Council and

others appellant was discharged from office and suffered loss of reputation.

The District Court rendered summary judgment in favor of appellee, holding, in part:

"The Navajo Tribe is a sovereign entity within the United States. [citing authority.] The position of the General Counsel of the Navajo Tribe, regardless of the manner of his employment and regardless of the title of his position is comparable to the Chief Legal Officer of the United States, any state thereof, or any political subdivision. * * *

It is the opinion of the Court that the position of General Counsel for the Navajo Tribe falls within the scope of the doctrine of absolute executive privilege. [citing authority.]"

The holding of the District Court involves several issues upon each of which appellant disputes the court's ruling. Arizona has not spoken upon these issues. Thus the rulings entail a prediction, stated generally, as to the extent to which the courts of the State of Arizona would attribute to the Navajo Tribe (and on its behalf enforce) a rule which the state, in the public interest, has seen fit to formulate on its own behalf. The District Court by its ruling has credited Arizona with an attitude of substantial deference to the Navajo Tribe to the detriment of rights of its own state citizens. Each question, as hereafter discussed, may rationally be answered to support the District Court's conclusions. Under the circumstances we are unable to say that in any respect the court has misconceived Arizona's attitude respecting its relationship with the Navajo Tribe or has erroneously stated the law of Arizona.

1. *Whether the Navajo Tribe is such a sovereign as can bestow absolute privilege upon its officers*

There can be little doubt that, with substantial federal domination of Indian affairs, the status of Indian tribes is an uncertain one today. See Oliver, The Legal Status of American Indian Tribes, 38 Ore.L.Rev. 193 (1959). The Supreme Court has long recognized the ambiguity of their position as both "domestic dependent nations" and wards of the federal government. Cherokee Nation v. State of Georgia, 30 U.S. (5 Pet.) 1, 17–18, 8 L.Ed.2d 25 (1831); Worcester v. State of Georgia, 31 U.S. (6 Pet.) 515, 8 L.Ed. 483 (1832).

Nevertheless, the concept of tribal sovereignty has been found a sufficient basis for extending to Indian tribes sovereign immunity from suit. United States v. United States Fidelity & Guaranty Co., 309 U.S. 506, 60 S.Ct. 653, 84 L.Ed. 894 (1940). We have recognized tribes to be "distinct political communities," Littell v. Nakai, 344 F.2d 486, 488 (9th Cir. 1965), cert. denied 382 U.S. 986, 86 S.Ct. 531, 15 L.Ed.2d 474 (1966), and it has been held that "Indian tribes * * * still possess their inherent sovereignty excepting only where it has been specifically taken from them, either by treaty or by Congressional Act." Iron Crow v. Oglala Sioux Tribe of Pine Ridge Reservation, 231 F.2d 89, 94 (8th Cir. 1956).

■ In our judgment it can hardly be disputed that the Navajo Tribe enjoys sufficient independent status and control over its own laws and internal relationships to be able to accord absolute privilege to its officers within the areas of tribal control.

2. *Whether the Navajo Tribe can be said to have bestowed absolute privilege on its executive officers*

■ It has not done so in its Tribal Code, nor, so far as we are informed, by any decision of its Tribal Court. By its Code, however (Navajo Tribal Code, tit. 7, ch. 3, § 34(C)), it would, under such circumstances be guided by federal or appropriate state law. As to federal officers, absolute executive privilege has long been established by court decision. Barr v. Matteo, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959); Spalding v. Vilas, 161 U.S. 483, 16 S.Ct. 631, 40 L.Ed. 780 (1896). The Navajo tribal capital is in Window Rock, Arizona.

The State of Arizona has adopted the rule of Barr v. Matteo as to its state officers. Long v. Mertz, 2 Ariz.App. 215, 407 P.2d 404 (1965).

3. *Whether appellee is such an officer of the Navajo Tribe as can claim absolute executive privilege.*

Certainly appellee's position with the Tribe was not a public office in the ordinary sense. It was employment under contract and terminable as such. Udall v. Littell, 366 F.2d 668 (D.C.Cir. 1966). cert. denied 385 U.S. 1007, 87 S.Ct. 713, 17 L.Ed.2d 545 (1967); Adams v. Murphy, 165 F. 304 (8th Cir. 1908). But this fact should not control in the disposition of the instant problem.

The need for absolute privilege is in the elimination of the "constant dread of retaliation" for injury committed in the course of duty and the allowance of "unflinching discharge of [official] duties" free from the threat of suit and charge of malice. Gregoire v. Biddle, 177 F.2d 579, 581 (2d Cir. 1949), cert. denied 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950).

The question, then, is not how the position is filled or the security of its tenure but whether it encompasses public duties, official in character. Here the Tribal Code, tit. 2, ch. 5, § 821, prescribes that the office of general counsel shall "Perform those functions generally required of a General Counsel's office in organizations engaged in the administration of public affairs." Duties are not limited to representing the Tribe in its disputes with others. They include advice with respect to the administration of the public affairs of the Tribe.

An important element of appellant's complaint is that defamation resulted from the manner in which appellee reported to the Tribal Council his views as to the competence and integrity of appellant, a subordinate employee. These are precisely the duties which were regarded as requiring the protection of privilege in Barr v. Matteo, supra, and Gregoire v. Biddle, supra.

■ Appellant protests that historically those who have served as general counsel for Indian tribes (and appellee in particular) have not demonstrated that unselfish dedication to the public interest which should qualify them for immunity from suit as public officers. As we have noted, however, the rule of privilege is not founded on the need of the individual officer, but on the public need for the performance of public duties untroubled by the fear that some jury might find performance to have been maliciously inspired.

■ That a tribe finds it necessary to look beyond its own membership for capable legal officers, and to contract for their services, should certainly not deprive it of the advantages of the rule of privilege otherwise available to it.

4. *Whether an Arizona state court would or should honor privilege bestowed by a foreign sovereign in a suit brought by an Arizona citizen*

Appellant, with substantial scholarly support,[1] attacks the rule of absolute executive privilege as unjust and outmoded and urges against its extension into areas not yet expressly committed to it.[2]

The rule may indeed be subject to criticism but we find it somewhat inconsistent for one jurisdiction to cherish the rule for itself while denying its benefits to a sovereign which does not possess the economic power to provide a just alternative.

1. See 3 K. Davis, Administrative Law Treatise, § 26.04, page 528 (1958); Becht, The Absolute Privilege of the Executive in Defamation, 15 Vand.L. Rev. 1127 (1962); Handler & Klein, The Defense of Privilege in Defamation Suits Against Government Executive Officials, 74 Harv.L.Rev. 44 (1960); Gray, Private Wrongs of Public Servants, 47 Calif.L.Rev. 303 (1959).

2. The author of this opinion has voiced objection to extension of the rule in his concurring opinion in S & S. Logging Co. v. Barker, 366 F.2d 617, 626 (9th Cir. 1966).

The question really addresses itself not to the merits of the rule, but to the extent to which Arizona state courts would accord comity to an Indian tribe geographically located within the state boundaries. As we have already stated, we are unable to say that the District Court erred in its prediction in this respect.

Judgment affirmed.