761 F.2d 1285
 Baker B. HARDIN, Jr., a single man, Plaintiff-Appellant,
v.
WHITE MOUNTAIN APACHE TRIBE, the White Mountain Apache
Tribal Game and Fish Department, the White Mountain Apache
Tribal Courts, the White Mountain Apache Tribal Police
Department, Ronnie Lupe, Reno Johnson, Sr., Ramus Albert,
Lafe Altaha, West Anderson, et al., Defendants-Appellees.
 Nos. 84-1912, 84-2164.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 18, 1985.
Decided February 26, 1985.
Redesignated as Opinion and
Ordered Published May 22, 1985.
 
 Baker Hardin, Jr., J. Mathias Myers, Tucson, Ariz., for plaintiff-appellant.
 Robert C. Brauchli, Whiteriver, Ariz., Anthony Cohen, Santa Rosa, Cal., for defendants-appellees.
 Appeal from the United States District Court for the District of arizona.
 Before MERRILL, FARRIS, and BEEZER, Circuit Judges.
 FARRIS, Circuit Judge:
 
 
 1
 In No. 84-1912, Hardin appeals from the judgment of the District Court of Arizona, Copple, J. presiding, dismissing his action for failure to state a claim. Hardin's suit in the district court had challenged the decision of the White Mountain Apache tribal courts to exclude him permanently from the Apache reservation, following Hardin's conviction in federal court for concealment of stolen federal property.
 
 
 2
 In No. 84-2164, a separate action consolidated with No. 84-1912, Hardin appeals the district court's award of attorneys' fees to the defendant Tribe.[1]
 
 
 3
 Hardin, a ten-year resident on reservation land leased from the Tribe by his parents, was convicted in February 1982 for concealment of solar cell panels and batteries stolen from a federal Observatory on the White Mountain Apache Tribe reservation. In August 1982, the tribal Council passed Ordinance No. 128, providing for the permanent exclusion of nonmembers of the Tribe from reservation land. A month later, the Council passed Resolution No. 82-222, authorizing a petition to the White Mountain Apache Tribal Court to exclude Hardin permanently from the reservation.
 
 
 4
 Because the tribal constitution requires all ordinances to be approved by the Secretary of the Interior prior to enactment, and Ordinance No. 128 had not yet been approved by the Secretary, the Tribal Court instead ordered Hardin's removal on the basis of an existing provision in the Tribal Code, Ch. VI, Part 1, Secs. 61.1-61.3, providing for temporary removal of nonmembers.
 
 
 5
 After some procedural difficulty, Hardin appealed the Tribal Court's Order of Removal to the Tribal Appeals Court. On April 4, 1983--four days before the Appeals Court rejected Hardin's appeal--tribal police forcibly removed Hardin from the reservation.
 
 
 6
 Hardin brought suit in the district court against the Tribe, Tribal Court, Tribal Council, and various officials in their individual capacities, seeking declaratory and injunctive relief and damages on both constitutional and statutory grounds. We have jurisdiction over the timely appeal from a federal question, 28 U.S.C. Sec. 1331, under 28 U.S.C. Secs. 1291 and 1294(1).
 
 
 7
 I. TRIBAL SOVEREIGN IMMUNITY.
 
 
 8
 Indian tribes generally enjoy a common law immunity from suit. Santa Clara Pueblo v. Martinez, 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978), United States v. United States Fidelity & Guaranty Co., 309 U.S. 506, 60 S.Ct. 653, 84 L.Ed. 894 (1940). This immunity does not, however, bar "actions which allege conduct that is determined to be outside the scope of a tribe's sovereign powers." Snow v. Quinault Indian Nation, 709 F.2d 1319, 1321 (9th Cir.1983), cert. denied, --- U.S. ----, 104 S.Ct. 2655, 81 L.Ed.2d 362 (1984) (footnote omitted); see Tenneco Oil Co. v. Sac & Fox Tribe of Indians of Oklahoma, 725 F.2d 572, 574 (10th Cir.1984); see also Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949) (individual officers cannot claim sovereign immunity when acting beyond the authority that the sovereign is capable of bestowing).
 
 
 9
 The Supreme Court has held that Indian tribes do not have inherent sovereign powers to try and to punish non-Indians for criminal acts. Oliphant v. Suquamish Indian Tribe, 435 U.S. 191, 98 S.Ct. 1011, 55 L.Ed.2d 209 (1978). On the other hand, the Supreme Court has also acknowledged that Indian tribes retain inherent sovereign power to exercise "some forms of civil jurisdiction over non-Indians on their reservations," Montana v. United States, 450 U.S. 544, 565, 101 S.Ct. 1245, 1258, 67 L.Ed.2d 493 (1981) (emphasis added). Hardin's exclusion falls within the Tribe's civil powers. "[T]he regulation is designed to keep reservation peace and protect the health and safety of tribal members," Babbitt Ford, Inc. v. Navajo Indian Tribe, 710 F.2d 587, 593 (9th Cir.1983), cert. denied, --- U.S. ----, 104 S.Ct. 1707, 80 L.Ed.2d 180 (1984), and as such is a permissible and "necessary exercise of tribal self-government and territorial management." Id.; see Montana, 450 U.S. at 564, 101 S.Ct. at 1257. Although Hardin attempts to characterize his exclusion as punitive in nature, retribution cannot be the goal of an ordinance that is triggered by a nonmember's crimes against an entirely separate, external state or federal sovereign. The United States has already imposed its own punishment for the nonmember's crime. The intent of the tribal ordinance is merely to remove a person who "threatens or has some direct effect on the ... health or welfare of the tribe," 450 U.S. at 566, 101 S.Ct. at 1258--a permissible civil regulation of the Tribe's internal order.
 
 
 10
 When a nonmember has entered into a consensual commercial relationship with the Tribe or its members the Tribe retains "inherent power to exercise civil authority over the conduct of [the nonmember] on fee lands within its reservation." Id. at 565-66, 101 S.Ct. at 1258-59. A tribe has power "to place conditions on entry, on continued presence, or on reservation conduct.... A nonmember who enters the jurisdiction of the tribe remains subject to the risk that the tribe will later exercise its sovereign power." Merrion v. Jicarilla Apache Tribe, 455 U.S. 130, 144-45, 102 S.Ct. 894, 905-06, 71 L.Ed.2d 21 (1982). The ordinance in question is just such a regulation of a nonmember's reservation conduct. See also Babbitt Ford, 710 F.2d at 590 (upholding tribal ordinance that permitted exclusion of nonmember who has wilfully violated automobile repossession regulations).
 
 
 11
 Under the special circumstances of this case, where a nonmember entered the reservation under color of a lease in which the Tribe had specifically reserved its power of exclusion, and where Hardin had already been convicted under the laws of a separate sovereign, we conclude that the Tribe acted within its civil jurisdiction when it ordered Hardin's removal.
 
 
 12
 Our result is consistent with the views expressed by all nine Justices in Merrion, the most recent Supreme Court decision in this area, when the Court affirmed an Indian tribe's sovereign power to exclude nonmembers. See 455 U.S. at 144-45, 102 S.Ct. at 905-06; id. at 185, 102 S.Ct. at 926 (Stevens, J., dissenting). Although the three dissenters in Merrion would have prohibited the tribe from imposing an oil and gas severance tax because the tribe had failed to give notice of its sovereign power when it originally contracted with the nonmember lessee, in Hardin's case, his parents' lease provisions did include notice that the Tribe might exercise its dormant sovereign power of exclusion. Hence, the logic of both the dissent and the majority opinion in Merrion support the Tribe's exercise of exclusion powers here. See also Babbitt Ford, 710 F.2d at 594.
 
 
 13
 Finally, the policies underlying both the power to exclude and the deprivation of criminal jurisdiction can only be served by upholding the Tribe's power to exclude Hardin. By permitting the Tribe to exclude those already convicted of a state or federal crime, we leave original jurisdiction in the hands of state or federal authorities. All that remains to the Tribe is the uncomplicated determination of whether or not the nonmember has a criminal record; indeed, as in Hardin's case, the nonmember will frequently admit his prior conviction and the hearing need never proceed to a full-fledged criminal trial. The Tribe's ordinance is totally dependent on United States law for determination of virtually all relevant issues of law and fact. Oliphant's concern that the tribal court will try nonmembers "not by their peers, nor by the customs of their people, nor the law of the land, but by ... a different race, according to the law of a social state of which they have an imperfect conception," Oliphant, 435 U.S. at 210-11, 98 S.Ct. at 1021-22, quoting Ex parte Crow Dog, 109 U.S. 556, 571, 3 S.Ct. 396, 406, 27 L.Ed. 1030 (1883), is unfounded here.II. INDIVIDUAL IMMUNITY OF TRIBAL OFFICERS.
 
 
 14
 Because the Tribe acted within its sovereign powers when it tried Hardin, sovereign immunity shields the Tribe from any suit arising out of the proceeding. See Tenneco Oil, 725 F.2d at 574; Snow, 709 F.2d at 1321. This tribal immunity extends to individual tribal officials acting in their representative capacity and within the scope of their authority. 709 F.2d at 1321; United States v. Oregon, 657 F.2d 1009, 1012 n. 8 (9th Cir.1981). Because all the individual defendants here were acting within the scope of their delegated authority, Hardin's suit against them is also barred by the Tribe's sovereign immunity.
 
 
 15
 The judgment in No. 84-1912 is AFFIRMED.
 
 
 16
 III. THE ATTORNEYS' FEES AWARD.
 
 
 17
 The plaintiff bringing an action under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. Sec. 1983 may be assessed the defendant's attorneys' fees if "the plaintiff's action was frivolous, unreasonable, or without foundation." Hughes v. Rowe, 449 U.S. 5, 14, 101 S.Ct. 173, 178, 66 L.Ed.2d 163 (1980); Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978); Boatowners & Tenants Ass'n v. Port of Seattle, 716 F.2d 669, 674 (9th Cir.1983). We review the district court's attorneys' fees award under the abuse of discretion standard. Christiansburg, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648.
 
 
 18
 Upon careful review of the record, we cannot say that the district court abused its discretion in awarding attorneys' fees to the Tribe. Because the Tribe acted within its civil jurisdiction, see Merrion, 455 U.S. at 144-45, 102 S.Ct. at 905-06; Montana, 450 U.S. at 564-66, 101 S.Ct. at 1257-59; Babbitt Ford, 710 F.2d 587, Hardin's claim was patently barred by Supreme Court discussion of the scope of tribal sovereignty.
 
 
 19
 Furthermore, the Supreme Court has repeatedly recognized that in addition to the frivolity of a claim, a litigant's bad faith behavior will support a district court's exercise of its inherent power to award attorneys' fees. Roadway Express, Inc. v. Piper, 447 U.S. 752, 766, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980), citing Hall v. Cole, 412 U.S. 1, 15, 93 S.Ct. 1943, 1951, 36 L.Ed.2d 702 (1973). "[I]f a plaintiff is found to have brought or continued such a claim in bad faith, there will be an even stronger basis for charging him with the attorney's fees incurred by the defense." Christiansburg, 434 U.S. at 422, 98 S.Ct. at 701 (emphasis in original). Hardin's motions before the district court were replete with material omissions and misstatements. These include the contention that he rather than his parents was the lessee in possession--a fact important in determining the nature of the property right alleged to have been violated--and the failure to disclose in his Complaint, Motion for Preliminary Injunction, or Memorandum of Law in support thereof that the basis of his expulsion was his conviction of a federal crime.
 
 
 20
 The district court did not abuse its discretion in charging Hardin with the Tribe's attorney's fees. We could, but do not now award the Tribe additional attorney's fees on appeal.
 
 
 21
 AFFIRMED.
 
 
 
 [1]
 We deny appellees' motion to strike Hardin's opening brief filed in case No. 84-1912, and examine the attorneys' fees action on the merits