Terry BAUGUS, Plaintiff,

v.

Robert L. BRUNSON, et al., Defendants.

No. Civ. S–94–1289 WBS/JFM.

United States District Court,
E.D. California.

June 13, 1995.

Terry Baugus, Fairfield, CA, pro se.

William A. Bergen, Law Offices of William A. Bergen, Auburn, CA, for Terry Baugus.

David Francisco De Alba, Atty. General's Office, Sacramento, CA, for Robert L. Brunson and J. Polen.

Wendy Carol York, Bolling Walter and Gawthrop, Sacramento, CA, for L. Baker and Jailor Gordon, Yolo County Court and Scott Gordon.

John Scott Smith, Dickstein and Merin, Sacramento, CA, for Mark Longshore.

Bradley Robert Larson, Greve Clifford Wengel and Paras, Sacramento, CA, for Cliff's Auto Center.

### MEMORANDUM AND ORDER

SHUBB, District Judge.

On July 28, 1994, defendant Mark Longshore, a security officer at the Cache Creek Indian Casino, made a citizens' arrest of plaintiff Terry Baugus. Baugus brought this action seeking recovery against Long-

shore and various other defendants under 42 U.S.C. §§ 1983 and 1985. Longshore now moves for summary judgment. The court heard arguments on the motion on May 1, 1995, and again on June 12, 1995, and now denies defendant's motion.[1]

## BACKGROUND

Defendant Mark Longshore is the Assistant Director of Security at the Cache Creek Indian Casino and Bingo ("Cache Creek"). Longshore Decl. ¶ 2. Cache Creek is owned and operated by the Rumsey Indian Rancheria of Wintun Indians (the "Tribe"), a federally recognized Indian Tribe. Longshore Decl. ¶ 2; Lorenzo Decl. ¶ 2.

Longshore offers the following account of the relevant events. The evening of July 28, 1994, a security officer working under Longshore informed him that an intoxicated patron was attempting to park his truck in a reserved area of the casino's parking lot. *Id.* ¶ 8. Upon investigating, Longshore found Baugus sitting in his truck. Longshore concluded that Baugus was intoxicated and informed him that he would not be allowed to enter the casino. *Id.* ¶¶ 8–11. Because Baugus was acting in a belligerent manner, Longshore instructed one of his subordinates to phone the Yolo County Sheriff's Department. *Id.* ¶ 11.

At that point Baugus drove away from the casino. *Id.* ¶ 12. Longshore responded by calling the California Highway patrol. *Id.* ¶ 12. A short time later, Baugus returned. *Id.* ¶ 13. By then, a Yolo County patrol car had arrived. While the local officer was talking with Baugus, two California Highway Patrol officers arrived. They gave Baugus a field sobriety test, and concluded he was intoxicated.[2] Baugus Decl. ¶ 4. However, they apparently believed they lacked the authority to arrest Baugus, since they had not seen him driving. *Id.* ¶ 5. Longshore had seen him driving, though, so the Highway Patrol officers asked Longshore to make a citizens' arrest. *Id.;* Longshore Decl. ¶¶ 13–14. Longshore put his head into the car where Baugus was being held and told him that he was under arrest. *Id.*

Cache Creek adheres to a strict no alcohol policy at the casino. Longshore Decl. ¶ 4. No one may drink on the grounds of the facility, and intoxicated persons are not allowed to enter. *Id.* ¶ 6. Cache Creek security officers are trained to deal with intoxicated persons in the following manner. First, they are to encourage any sober friends of the intoxicated person to drive that person home. Patterson Decl. ¶ 8. If the intoxicated person is unaccompanied, the officer is trained to encourage the intoxicated person to remain in the parking lot until they become sober enough to drive. *Id.* Officers are authorized to offer the intoxicated individuals coffee or food, if necessary. *Id.* If a patron becomes belligerent, the officers are to call the Yolo County Sheriff's Department. *Id.* ¶ 9. If the individual attempts to drive away, the California Highway Patrol is called. *Id.* Finally, once local or state authorities arrive, the security officers are instructed to cooperate with them. *Id.*

## STANDARD

Summary judgment is appropriate if the record, read in the light most favorable

---

1. Prior to the first hearing, defendant urged the court to decide this motion without allowing plaintiff to appear. In so arguing, defendant misread Local Rule 230(c). Defendant contended that plaintiff was not entitled to be heard because plaintiff failed to serve defendant with a copy of the opposition within seventeen days of the hearing date as required by Local Rule 230(c). However, the plain language of Local Rule 230(c) only deprives one of the right to be heard at oral argument if the "opposition to the motion has not been timely *filed* by that party." Plaintiff's opposition was timely filed with this court. *See* Local Rule 101(13) ("'Filed' means delivered into the custody of the Clerk and accepted by the Clerk for inclusion in the official records of the action."). Local Rule 230(c) does not require the court to deprive plaintiff (and the court itself) of the benefits of oral argument because an opposition was not timely *served* on the other side.

2. Baugus explains that he had had nothing to drink that day, and that his failure to pass the field sobriety test was due to injuries to his back and knees. Baugus Decl. ¶ 4. In addition, he states only that he drove his truck from one end of the casino parking lot to the other. He makes no mention of leaving the casino parking lot. These are the only material differences between the parties' respective versions of events.

to the non-moving party, demonstrates no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Material facts are those necessary to the proof or defense of a claim, and are determined by reference to the substantive law. *See Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). At the summary judgment stage the question before the court is whether there are genuine issues for trial. The court does not weigh evidence or assess credibility. *Id.*

A fact is material if it could affect the outcome of the suit under the governing law. *Anderson,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987). There is a genuine dispute if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Wool v. Tandem Computers, Inc.,* 818 F.2d 1433, 1436 (9th Cir.1987). In order to successfully oppose a motion for summary judgment the nonmovant need only demonstrate enough of a dispute such that a rational trier of fact could find in their favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 588, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986).

## ANALYSIS

### I. Tribal Immunity

Longshore first argues that he is a tribal officer who was acting within the course and scope of his tribal authority, and is thus protected by the sovereign immunity of the Tribe. The Ninth Circuit has held that the sovereign immunity of an Indian tribe extends to "tribal officials [when they] act in their official capacity and within the scope of their authority.…" *Imperial Granite Co. v. Pala Band of Indians,* 940 F.2d 1269, 1271 (9th Cir.1991). The uncontroverted declarations submitted by Longshore establish that he was acting in his official capacity and within the scope of his authority when Baugus was arrested.

The critical question is whether he was a tribal official. Longshore does not maintain that he was a member of the Tribe;

however, he worked for and was paid by the Tribe, and performed his duties under the Tribe's direction and authority. It is not required, at least in this circuit, that one be a member of a tribe in order to be a "tribal official" for the purpose of sharing in the tribe's sovereign immunity. In *Davis v. Littell,* 398 F.2d 83, 85 (9th Cir.1968), the Ninth Circuit held that tribal sovereignty could be invoked by the general counsel of the Navajo Tribe, who was not himself a Navajo, but who played a key role in advising members of the tribal council. A survey of federal decisions employing the term "tribal officials" indicates that it is virtually always used to denote those who perform some type of high-level or governing role within the tribe. *See, for example, Hopi Tribe v. Navajo Tribe,* 46 F.3d 908, 918 (9th Cir.1995) (used to refer to deputy attorney general of Navajo Nation); *Cheyenne River Sioux Tribe v. South Dakota,* 3 F.3d 273, 276 (8th Cir.1993) (tribal members who negotiated with governor).

In a few instances, courts have been more generous in extending immunity to tribal officials. However, these cases invariably involve defendants who are also members of the tribe. For example, in *Hardin v. White Mountain Apache Tribe,* 779 F.2d 476, 479–80 (9th Cir.1985), the court upheld a finding of sovereign immunity in favor of tribal police officers who had forcibly removed a man from his home after the tribal council had decided to exclude him permanently from the reservation. Another case cited by defendant suggests in dictum that a tribal revenue officer is also entitled to invoke the tribe's sovereign immunity, at least when sued in her official capacity. *Snow v. Quinault Indian Nation,* 709 F.2d 1319, 1322 (9th Cir. 1983).

Neither *Hardin* nor *Snow* support the extension of tribal immunity to Longshore. In *Hardin* the tribal officers were carrying out a direct order from the tribal council. Furthermore, in evicting a person who had been banished from the reservation, they were carrying out a function at the very core of tribal sovereignty. Longshore, by contrast, is a non-member who was providing private security for a casino operated by the Tribe.

While the Ninth Circuit has recognized that a tribe's sovereign immunity extends to commercial operations, *see In re Greene*, 980 F.2d 590, 596 (9th Cir.1992), no similar ruling has extended this immunity to the individual employees of such an enterprise. The mere fact that Longshore was acting as an agent for his employer, the Tribe, does not cloak him with the Tribe's immunity.

There are also important differences between *Snow* and this case. First, in *Snow* the suit was brought to enjoin the implementation of a new tax the tribe was attempting to impose on local businesses. Second, the clerk in *Snow* was named as a defendant solely in her official capacity. Third, the suit in *Snow* was not brought under § 1983 and thus the doctrine of respondeat superior was not precluded. *See Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Thus, the court in *Snow* viewed the naming of the clerk as a defendant as a "simple expedient" calculated to "avoid the doctrine of sovereign immunity." 709 F.2d at 1322. Such is not the case here. Baugus seeks damages, not an injunction. Furthermore, Longshore is sued in his individual capacity only, and the Tribe may not be held liable under § 1983 for Longshore's actions.

In sum, nothing cited by either party supports the conclusion that a casino security officer, even one with supervisory authority, is a "tribal official" for purposes of sharing in tribal immunity.[3]

## II. Section 1983

Longshore next argues that Baugus cannot establish his claim under § 1983. A claim under § 1983 has two elements: (1) the conduct complained of must be under color of state law, and (2) the plaintiff must have been subjected to a deprivation of constitutional rights due to the conduct. *Jones v. Community Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir.1984).

Disputed issues of fact remain on the question of whether Longshore infringed on a right actionable under § 1983. Baugus claims he was arrested without probable cause in violation of the Fourth Amendment. Such claims may be brought under § 1983. *McKenzie v. Lamb*, 738 F.2d 1005, 1007 (9th Cir.1984). There is probable cause to make an arrest if the facts and circumstances are such that a reasonable person would believe that the suspect has committed, is committing or is about to commit a crime. *United States v. Greene*, 783 F.2d 1364, 1367 (9th Cir.1986). The alleged crime in question here is driving while under the influence of alcohol. Cal.Veh.Code § 23153.

First, whereas Longshore claims he saw Baugus drive onto the highway, Baugus states merely that he moved his truck to the other side of the parking lot. Viewing the facts in Baugus' favor, there is a permissible inference that Baugus remained in the parking lot until his arrest. This dispute is material, since if Longshore did not see Baugus drive on the highway, or have reason to believe he was about to enter the highway, he could not have reasonably believed he had probable cause to arrest him. Second, Baugus in his declaration states that he was not intoxicated, but only tired, and that he communicated this fact to Longshore.[4] Thus, material issues of fact remain as to whether a

---

3. At the May 1, 1995 hearing, counsel for defendant assured the court that there was ample authority for the proposition that employees of a tribal commercial enterprise were shielded from individual liability by the tribe's sovereign immunity. Given additional time to research the matter, defendant was unable to produce a single case in support of his position. Instead, he inexplicably argues "that the reach of the Tribe's sovereign immunity is the same as that of the United States." This may very well be the case, but if Longshore were a federal officer he would not be entitled to the sovereign immunity of the United States. Only qualified immunity would be available to him. *See Butz v. Economou*, 438 U.S. 478, 507, 98 S.Ct. 2894, 2911, 57 L.Ed.2d 895 (1978).

4. Longshore argues that the question of whether Baugus was intoxicated has already been litigated and that a jury found Baugus guilty of driving while intoxicated. He has submitted several court documents and asks the court to take judicial notice of this fact. However, while the documents do seem to indicate that Baugus was found guilty on September 20, 1994 of something, nothing contained in them suggests that the charge was drunken driving, or that the underlying offense was in any way related to this lawsuit.

reasonable person in Longshore's situation could have believed that Baugus had driven or was about to drive on a state highway while intoxicated.

■■■ Disputed issues of fact also remain on the question of whether Longshore was acting under color of state law when he arrested Baugus. The Ninth Circuit employs a totality of the circumstances test in determining whether the acts of a private person making a citizens' arrest are done under color of state law. *Collins v. Womancare*, 878 F.2d 1145, 1150 (9th Cir.1989). Baugus bases his argument on a "joint action theory." *Id.* at 1154. Under this theory, Longshore was acting under color of state law if the two Highway Patrol officers so far insinuated themselves into a position of interdependence with Longshore that they must be recognized as joint participants in Baugus' arrest. *Id.*

Baugus offers the following version of the incidents surrounding his arrest:

> I was handcuffed and placed in the rear of the (sic) patrolman Brunson's car. I asked defendant Brunson (one of the Highway Patrol officers) if I was under arrest and was told by the defendant, "I didn't see you do it so I have to get somebody to arrest you." I then observed Brunson meet with defendant Longshore and the two men came back to the patrol car. I then observed Brunson ask Longshore to put me under arrest. Longshore put his head in the car and told me that I was under arrest.

Baugus Decl. ¶ 13. Were Baugus to credibly testify to this version of events, a jury could reasonably find that Longshore and the Highway Patrol officers jointly participated in Baugus' arrest.

In *Fraser v. County of Maui*, 855 F.Supp. 1167, 1178 (D.Hawaii 1994), a district court denied the defendant's motion for summary judgment on precisely this issue. *Fraser* involved a dispute between a condominium complex manager (the plaintiff) and a resident (the defendant) who, believing the manager was not satisfactorily performing his duties, followed him around for three and a half days. After calling the police several times, the manager finally made a citizens'

arrest of the resident for harassment. No police officer was present when the manager made the citizens' arrest. However, a local police officer had advised the condominium resident on several occasions that her behavior was unlawful and that she might be arrested. Moreover, the same officer also informed the defendant that the plaintiff's conduct was unlawful, and instructed him on the procedures for making a citizens' arrest. This was enough to create a triable issue of fact on the question of joint action which precluded summary judgment.

In this case, Baugus has produced evidence suggesting an even greater involvement than that faced by the court in *Fraser*. *See also Sloman v. Tadlock*, 21 F.3d 1462, 1474 (9th Cir.1994) (reversing summary judgment in favor of citizen defendant who swore out complaint leading to plaintiff's arrest); *Stypmann v. City and County of San Francisco*, 557 F.2d 1338, 1341–42 (9th Cir.1977) (finding joint activity between police and private towing company); *and compare Collins*, 878 F.2d at 1155 (finding no joint activity because impetus for arrest came entirely from citizen, police officer refused to make arrest himself, and police maintained strict neutrality in dispute). The court cannot determine on a motion for summary judgment that Longshore was not acting under color of state law.

### III. Section 1985

■■■ Finally, Longshore argues that Baugus cannot establish his claim under 42 U.S.C. § 1985. A claim under § 1985 has four elements: (1) a conspiracy; (2) undertaken for the purpose of depriving a person of the equal protection of the laws because of their race or status as a member of a protected group; (3) an act in furtherance of the conspiracy; and (4) a resulting injury. *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir.1992). Material issues of fact remain which preclude summary judgment on this claim. The court cannot find as a matter of law that there was no conspiracy for the same reasons that it could not conclude that there was no joint action between Longshore and the Highway Patrol officers. In addi-

tion, Baugus alleges that he is a Native American. Compl. ¶ 28. Since under his version of events the arrest was unjustified by any legitimate reason, the court cannot find as a matter of law that no reasonable jury could infer that the arrest was motivated by racial animus and for the purpose of depriving Baugus of equal protection under the law.

IT IS THEREFORE ORDERED that defendant Longshore's motion for summary judgment be, and the same hereby is, DENIED.