[No. E026082. Fourth Dist., Div. Two. July 13, 2000.]

REGINALD TURNER et al., Plaintiffs and Appellants, v. JEFFREY MARTIRE et al., Defendants and Respondents.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II.A, II.B, and II.C.3.

**COUNSEL**

Davis, Cowell & Bowe, Elizabeth A. Lawrence, Michael T. Anderson and Florence E. Culp for Plaintiffs and Appellants.

Levine & Associates, Jerome L. Levine, Erin M. Copeland; and Frank R. Lawrence for Defendants and Respondents.

**OPINION**

**RICHLI, J.**—Plaintiffs Reginald Turner and Steve Guzman appeal from an order quashing service and dismissing their tort action against defendants Jeffrey Martire, Michael Turner, and Robert Mezzie. The principal issue is whether the trial court correctly ruled that defendants, as law enforcement officers of an Indian tribe, were protected by the tribe's sovereign immunity against liability for allegedly assaulting and improperly detaining plaintiffs.

As we will discuss, tribal immunity has been extended to tribal officials who act in their official capacity and within the scope of their authority. We conclude that to qualify for such immunity, defendants must show they performed discretionary or policymaking functions within or on behalf of the tribe. We find the record insufficient to establish that defendants met this requirement, and also insufficient to show they acted within the scope of their official authority in doing the acts alleged. Accordingly, we reverse.

I

FACTUAL AND PROCEDURAL BACKGROUND

The San Manuel Band of Mission Indians (Tribe), a federally recognized Indian tribe, owns and operates the San Manuel Indian Bingo and Casino, a

gaming facility located on the Tribe's reservation in San Bernardino County, California. Defendants are tribal law enforcement officers, but are not members of the Tribe.

Plaintiffs are union organizers. On February 10, 1999, plaintiffs were at the bingo and casino facility to speak with employees about their legal rights. Plaintiff Turner was taking photographs to document his activities.

According to the complaint, defendant Martire approached Turner, demanded his camera, and pushed him. Martire instructed the other defendants to force Turner to the ground and take his camera. Several defendants, their names unknown, pushed Turner to the ground, handcuffed him, struck and kicked him, rammed his head into a wall, and sprayed pepper spray into his face and chest. Several defendants opened Turner's camera and exposed the film. At the direction of Martire, various defendants then forced both plaintiffs into a trailer office, detained and arrested them, and caused them to be detained by county sheriff's deputies without probable cause. Plaintiffs allege defendants took these actions because they opposed plaintiffs' efforts to inform the casino employees of their collective bargaining rights and because plaintiffs opposed an initiative measure authorizing Indian gaming.

Plaintiffs brought suit for damages for assault and battery, false imprisonment, conversion, and violation of civil rights pursuant to Civil Code section 51.7.[1] Defendant Mezzie moved to quash service of summons, on the ground the court lacked personal and subject matter jurisdiction due to tribal sovereign immunity. The court granted the motion, and the parties stipulated the ruling would apply to defendants Martire and Turner as though they had joined in Mezzie's motion.

## II

### DISCUSSION

A., B.*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

C.   *Immunity of Tribal Employees*

■      As stated *post*, under federal law, "Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally

---

[1]Civil Code section 51.7, in relevant part, provides that all persons have the right to be free from any violence, or intimidation by threat of violence, committed because of their political affiliation or position in a labor dispute.

*See footnote, *ante*, page 1042.

enjoyed by sovereign powers." (*Santa Clara Pueblo v. Martinez* (1978) 436 U.S. 49, 58 [98 S.Ct. 1670, 1677, 56 L.Ed.2d 106].) At the same time, the United States Supreme Court has repeatedly stated that tribal immunity generally "does not immunize the individual members of the Tribe." (*Puyallup Tribe v. Washington Game Dept.* (1977) 433 U.S. 165, 172 [97 S.Ct. 2616, 2621, 53 L. Ed. 2d 667], fn. omitted; accord, *Santa Clara Pueblo v. Martinez, supra*, 436 U.S. 49, 59 [98 S.Ct. 1670, 1677]; see also *Oklahoma Tax Comm'n v. Potawatomi Tribe* (1991) 498 U.S. 505, 514 [111 S.Ct. 905, 912, 112 L.Ed.2d 1112] ["We have never held that individual agents or officers of a tribe are not liable for damages in actions brought by the State"].)

Lower federal court decisions, however, have extended immunity to "tribal officials" when such officials act "in their official capacity and within their scope of authority." (*United States v. State of Or.* (9th Cir. 1981) 657 F.2d 1009, 1012, fn. 8; accord, *Hardin v. White Mountain Apache Tribe* (9th Cir. 1985) 779 F.2d 476, 479.) To determine whether defendants were entitled to immunity, we therefore must consider whether they adequately established first, that they were tribal officials, and second, that the acts of which they were accused were committed in their official capacity and within their scope of authority.

### 1. *Immunity of tribal officials*

In *Baugus v. Brunson* (E.D.Cal. 1995) 890 F.Supp. 908 (hereafter *Baugus*), the court held a tribal security officer, who was not a member of the tribe, was not a "tribal official" entitled to immunity in a civil rights action under 42 United States Code sections 1983 and 1985. The court stated the term "tribal official" was "virtually always used to denote those who perform some type of high-level or governing role within the tribe." (*Baugus, supra,* at pp. 911-912.)

Defendants assert *Baugus* is unprecedented and is at odds with Ninth Circuit Court of Appeals authority, notably *Snow v. Quinault Indian Nation* (9th Cir. 1983) 709 F.2d 1319 (hereafter *Snow*), *Hardin v. White Mountain Apache Tribe, supra*, 779 F.2d 476 (hereafter *Hardin*), and *Davis v. Littell* (9th Cir. 1968) 398 F.2d 83 (hereafter *Davis*).

*Snow* held immunity extended to a "Tribal Revenue Clerk." (*Snow, supra,* 709 F.2d at p. 1322.) As defendants point out, the court did not condition immunity on a showing that the clerk occupied a high-level position within the tribe. *Snow*, however, was an action challenging a tax on business activities within the tribe's reservation. There was no claim that the clerk

was liable in her individual capacity; she was sued only in her official capacity. (*Ibid.*) The court therefore held the case came within the rule established in *Larson v. Domestic & Foreign Corp.* (1949) 337 U.S. 682, 688 [69 S.Ct. 1457, 1460-1461, 93 L.Ed. 1628] (hereafter *Larson*) that sovereign immunity may not be avoided by nominally suing an individual when the suit is, in substance, to compel action by the sovereign. (*Snow*, citing *Larson.*) Because it involved, in substance, a suit against the tribe rather than its officer, *Snow* cannot be read as establishing that *individual* immunity attaches without regard to the nature of a tribal officer's official position and duties.

In *Hardin*, the plaintiff sued a tribe and "various officials" after tribal police removed him from the reservation. (*Hardin, supra,* 779 F.2d at p. 478.) The court held the individual defendants were immune. (*Id.,* at pp. 479-489.) However, although the caption of the opinion indicates the tribal police department was named as a defendant, the opinion does not state whether individual police officers were named, nor does it address specifically the issue of whether tribal police should be immune. Therefore, *Hardin* cannot be construed as holding that immunity extends to tribal police.

Defendants' remaining case authority, *Davis*, is particularly significant because it is the earliest decision, to our knowledge, that extended immunity to a tribal official. In *Davis*, the court held that a nontribal member employed as the tribe's general counsel could not be sued for making a defamatory statement to the tribal council about his assistant. The court concluded that protection against liability was justified by "the public need for the performance of public duties untroubled by the fear that some jury might find performance to have been maliciously inspired." (*Davis, supra,* 398 F.2d at p. 85.)

In reaching that conclusion, *Davis* relied on United States Supreme Court authority holding federal officials absolutely privileged against liability for defamatory statements made in the performance of their duties. (*Barr v. Matteo* (1959) 360 U.S. 564 [79 S.Ct. 1335, 3 L.Ed.2d 1434]; *Spalding v. Vilas* (1896) 161 U.S. 483 [16 S.Ct. 631, 40 L.Ed. 780].) After *Davis* was decided, the Supreme Court further refined the absolute immunity afforded federal officials. In *Westfall v. Erwin* (1988) 484 U.S. 292 [108 S.Ct. 580, 98 L.Ed. 619] (hereafter *Westfall*), the court reversed a summary judgment for the defendants, federal employees who worked as supervisors at an Army depot, in a state court negligence action arising from a workplace injury to a civilian employee. The court held that "absolute immunity from state-law tort actions should be available only when the conduct of federal officials is within the scope of their official duties *and the conduct is discretionary in nature.*" (*Id.,* at pp. 297-298 [108 S.Ct. at p. 584], italics added.)

The *Westfall* court observed that "official immunity comes at a great cost. An injured party with an otherwise meritorious tort claim is denied compensation simply because he had the misfortune to be injured by a federal official. Moreover, absolute immunity contravenes the basic tenet that individuals be held accountable for their wrongful conduct." (*Westfall, supra,* 484 U.S. at p. 295 [108 S.Ct. at p. 583].) The court further observed that "[t]he central purpose of official immunity, promoting effective government, would not be furthered by shielding an official from state-law tort liability without regard to whether the alleged tortious conduct is discretionary in nature. When an official's conduct is not the product of independent judgment, the threat of liability cannot detrimentally inhibit that conduct." (*Westfall, supra,* 484 U.S. 292, 296-297 [108 S.Ct. 580, 584].)

In the case before it, the *Westfall* court held, summary judgment was improper because the plaintiff had asserted the defendants' duties only required them " 'to follow established procedures and guidelines' " and that they were " 'not involved in any policy-making work . . . .' " The defendants, who had the burden of proving they were immune, had not presented "any evidence relating to their official duties or to the level of discretion they exercise." (*Westfall, supra,* 484 U.S. at p. 299 [108 S.Ct. at p. 585].)

The application of *Westfall* to federal officials was superseded in 1988 by the enactment of the Federal Employees Liability Reform and Tort Compensation Act. That act eliminated the discretionary conduct requirement and conferred absolute immunity on federal employees for common law tort claims, relegating claimants to an action against the government under the Federal Tort Claims Act (FTCA). (28 U.S.C. § 2679(b), (d); see *Pani v. Empire Blue Cross Blue Shield* (2d Cir. 1998) 152 F.3d 67, 72.) However, "the *Westfall* test remains the framework for determining when nongovernmental persons or entities are entitled to the same immunity." (*Pani, supra,* at p. 72; accord, *Midland Psychiatric Associates, Inc. v. U.S.* (8th Cir. 1998) 145 F.3d 1000, 1005 ["[I]t is well established that *Westfall* still articulates the more restrictive federal common-law rule limiting official immunity to discretionary conduct."]; *Beebe v. Washington Metro. Area Transit* (D.C. Cir. 1997) 129 F.3d 1283, 1289 [327 App.D.C. 171] [". . . *Westfall* remains the common law rule . . . ."].)

Tribal immunity emanates from the common law. As previously noted, the United States Supreme Court has described tribal immunity as "the common-law immunity from suit traditionally enjoyed by sovereign powers." (*Santa Clara Pueblo v. Martinez, supra,* 436 U.S. 49, 58 [98 S.Ct. 1670, 1677, 56 L.Ed.2d 106].) The Ninth Circuit Court of Appeals similarly has stated: "A necessary first step in the [tribal immunity] analysis is determining the scope

of sovereign immunity at the common law." (*In re Greene* (9th Cir. 1992) 980 F.2d 590, 593.) *Davis* illustrates that the extension of common law immunity to tribal officials is founded on the need to protect such officials from the detrimental effect that the prospect of liability would have on their performance of their official duties. *Westfall* illustrates that, for this need to justify immunity, those official duties must involve the kind of discretionary decisions that are "the product of independent judgment," and that therefore would truly be inhibited by the threat of liability. (*Westfall, supra,* 484 U.S. 292, 296-297 [108 S.Ct. 580, 583-584].)

Viewed in light of *Westfall, Davis,* rather than undermining *Baugus* as defendants contend, supports *Baugus*'s conclusion that the "tribal officials" to whom immunity should extend are those who perform a high-level or governing role in the affairs of the tribe. Such individuals are required to make the kind of discretionary judgments which *Davis* and *Westfall* recognize cannot be made effectively without immunity.

Defendants make several attacks on this analysis. First, they assert that limiting immunity to individuals who perform discretionary or policymaking functions is unprecedented and at odds with the numerous federal decisions stating generally that immunity extends to "tribal officials when acting in their official capacity and within their scope of authority." (See, e.g., *United States v. State of Or., supra,* 657 F.2d 1009, 1012, fn. 8.) According to defendants, the inquiry with respect to immunity begins and ends with the question of whether the individuals involved acted within the scope of their authority.

We think there is inherent in the term "tribal officials" a recognition that not all individuals associated with a tribe are entitled to immunity. Otherwise, the decisions to which defendants refer would have used a broader term, such as "tribal employees and agents," to describe the class of individuals to whom immunity extends. Defendants have cited no decision, and we are aware of none, holding that the term "tribal officials" applies to all such individuals, without regard for the nature of their official positions or duties. On the contrary, the decisions recognizing immunity of tribal officials typically involve individuals who clearly occupied a discretionary or policymaking position, such as the tribal general counsel in *Davis.*

Conversely, where an individual does *not* occupy such a position, immunity has been denied. In *Otterson v. House* (Minn.Ct.App. 1996) 544 N.W.2d 64, for example, the court held a security guard for a tribally chartered corporation was not immune from liability for an off-reservation traffic accident that occurred while he was delivering mail to the post office.

Although it was undisputed that the guard was acting within the scope of his employment, the court found his employment was "merely ministerial" and his duties did not call for him to rely on a delegation of tribal authority. In addition, his tortious act did not relate to policymaking. (*Id.*, at p. 66.)[3] The court distinguished *Hardin* and *Snow, supra*, noting that "[n]either case . . . extends sovereign immunity to tribal employees." (*Otterson, supra,* at p. 66.) Other decisions similarly look to the nature of the position held by the official to determine whether he or she enjoys the tribe's immunity. (See, e.g., *Hegner v. Dietze* (Minn.Ct.App. 1994) 524 N.W.2d 731, 735 [factual issue existed whether position held by human resources manager for Indian casino was sufficient to provide him with immunity].)

Defendants further argue that the purposes of federal sovereign immunity and tribal immunity are different, and therefore that even if it is appropriate to limit federal common law immunity to officials who perform discretionary or policymaking functions, immunity of tribal officials should not be so limited. We fail to see why this should be so. The United States Supreme Court has observed that the purposes of tribal immunity include encouraging tribal self-sufficiency and economic development. (*Oklahoma Tax Comm'n v. Potawatomi Tribe, supra*, 498 U.S. 505, 510 [111 S.Ct. 905, 909-910, 112 L.Ed.2d 1112].) The kinds of core governmental functions which most directly affect tribal self-sufficiency and development are virtually certain to involve policymaking and the exercise of discretion. Declining to extend immunity to individuals who do not perform such functions will not inhibit the purposes of the doctrine.

Moreover, there is ample precedent for applying principles governing the immunity of the federal government and its officials in determining the scope of tribal immunity. As noted *ante, Davis*, which appears to be the seminal decision extending immunity to tribal officials, relied on United States Supreme Court decisions concerning the immunity of federal officers. Defendants assert *Davis* represents a unique situation because in that case the court noted the tribe had specifically provided in its tribal code that it would be "guided by federal or appropriate state law." (*Davis, supra*, 398 F.2d 83, 84.) The court made that observation, however, only in addressing whether the tribe could be considered to have bestowed absolute immunity on its officers. (*Ibid.*) It did not suggest that, if the tribe had *not* adopted

---

[3]We note, however, that two other courts appear to have assumed, without discussion, that tribal immunity covers law enforcement officers performing their official duties. (*Suarez v. Newquist* (1993) 70 Wn.App. 827, 832 [855 P.2d 1200, 1204] [tribal police officer entitled to immunity for injury arising from transportation of victim]; *Romero v. Peterson* (10th Cir. 1991) 930 F.2d 1502, 1505 [law enforcement officers who had been cross-deputized with Bureau of Indian Affairs and Indian pueblo would have a "substantial argument" for invoking tribal immunity if they were "tribal actors" when they allegedly beat arrestee].)

federal law, it could extend to its officers a degree of immunity beyond that enjoyed by officers of a sovereign under ordinary principles of sovereign immunity. Indeed, such a suggestion would conflict with the principle, cited *ante*, that tribal immunity is "the common-law immunity from suit traditionally enjoyed by sovereign powers." (*Santa Clara Pueblo v. Martinez, supra,* 436 U.S. 49, 58 [98 S.Ct. 1670, 1677, 56 L.Ed.2d 106].)

Additionally, subsequent federal decisions routinely cite *Davis*, or decisions relying on *Davis*, in addressing the immunity of tribal officials. (See, e.g., *United States v. State of Or., supra,* 657 F.2d 1009, 1013, fn. 8 [citing *Davis*]; *Snow, supra,* 709 F.2d 1319, 1321 [citing *United States v. State of Or.*]; *Imperial Granite Co. v. Pala Band of Indians* (9th Cir. 1991) 940 F.2d 1269, 1271 [citing *United States v. State of Or.*].) If *Davis* were limited to its unique facts as defendants suggest, these subsequent decisions would not have relied on it.

Most significantly, defendants in their effort to distinguish *Davis*'s reliance on federal law have offered no alternative basis for extension of immunity to tribal officials. As a common law doctrine, tribal immunity and any extension of it to tribal officials must be grounded in some body of judicial decisions. As noted *ante*, the United States Supreme Court has never endorsed the extension of tribal immunity to individuals. *Davis* appears to represent the beginning of the line of lower federal court decisions recognizing such an extension under limited circumstances. If, as defendants argue, the federal common law on which *Davis* based its extension of immunity only applied because of the unique situation presented in *Davis*, then the subsequent decisions applying *Davis*'s holding in other situations are left without any identifiable basis for their extension of immunity.

In any event, *Davis*'s reliance on federal law hardly can be considered unique to that case. Numerous other courts, including both the United States and California Supreme Courts, also have looked to authority concerning the immunity of federal officials in addressing the immunity of tribal officials. (See, e.g., *Santa Clara Pueblo v. Martinez, supra,* 436 U.S. 49, 59 [98 S.Ct. 1670, 1677, 56 L.Ed.2d 106] [citing *Ex parte Young* (1908) 209 U.S. 123 [28 S.Ct. 441, 52 L.Ed.2d 714] in stating that officer of Indian pueblo was not protected by tribe's immunity from suit]; *Burlington Northern v. Blackfeet Tribe* (9th Cir. 1991) 924 F.2d 899, 901, overruled in part on another point as noted in *Big Horn County Elec. Coop., Inc. v. Adams* (9th Cir. 2000) 219 F.3d 944 [citing *Larson, supra,* 337 U.S. 682, in holding that principle that sovereign immunity does not extend to officials acting pursuant to allegedly unconstitutional statute should apply to tribal officials]; *Boisclair v. Superior Court* (1990) 51 Cal.3d 1140, 1157 [276 Cal.Rptr. 62, 801 P.2d 305]

(hereafter *Boisclair*) [citing *Larson*, in stating that agent of a sovereign may be liable for acts in excess of authority; noting that "[t]his general principle of sovereign immunity has been applied to Indian sovereign immunity"].) Similarly, one respected commentator has stated, citing *Puyallup Tribe v. Washington Game Dept, supra*, 433 U.S. 165 [97 S.Ct. 2616, 53 L. Ed. 2d 667] and *Santa Clara Pueblo v. Martinez, supra*, 436 U.S. 49: "The Supreme Court has held that tribal immunity also does not preclude actions against tribal officials based on their official actions *in circumstances where immunity would not bar actions against other government officials.*" (Cohen, Handbook of Federal Indian Law (1982 ed.) p. 328, italics added, fn. omitted.)

Defendants argue that, even if sovereign and tribal immunity are sufficiently analogous to warrant similar treatment, Congress's rejection of *Westfall*'s limitation of federal employee immunity to employees performing discretionary functions shows it also would reject such a limitation on immunity of tribal officials. The argument overlooks the fact that Congress in declining to limit federal employees' immunity was dealing with a fundamentally different situation than that presented here. By extending absolute immunity to all federal employees, Congress did *not* leave those injured by their conduct without a court remedy. Rather, it merely determined that the remedy should consist of an FTCA action *against the government.* The relevant legislative history indicates that Congress believed such a remedy not only was an adequate substitute for, but actually was superior to, a common law tort suit: "From the perspective of a person injured by the official conduct of a Federal employee, the ability to sue the United States under the FTCA generally has distinct advantages over a suit against the individual Federal employee." (H.R.Rep. No. 100-700, 2d Sess. (1988), reprinted in 1988 U.S. Code Cong. & Admin. News, pp. 5945, 5948.)

Thus, Congress's extension of absolute immunity to federal employees was in keeping with the principle that "[w]here a statute consenting to relief against the United States is available, other actions against responsible officers are generally precluded." (Cohen, Handbook of Federal Indian Law, *supra*, p. 320, fn. omitted.) In contrast, if defendants in this case were held to be absolutely immune, plaintiffs would have no alternative tort remedy, because there is no statute authorizing a suit against the Tribe itself.

Moreover, Congress in extending immunity to all federal employees was concerned that, if immunity were limited to employees performing discretionary functions, the impact would be most severe on "lower-level employees; that is, the 'rank and file' workers who are least likely to exercise discretion in carrying out their duties." (H.R.Rep. No. 100-700, 2d Sess.,

*supra*, reprinted in 1988 U.S. Code Cong. & Admin. News, p. 5946.) But even under defendants' view, tribal immunity only covers "tribal officials." Lower level employees would not be covered in any event. Congress's concern about the effect on such employees of limiting immunity therefore is not implicated in the context of tribal immunity.

Defendants finally suggest that limiting immunity to officials who perform discretionary or policymaking functions will inject an unacceptable element of uncertainty into actions against tribal officials, because the issue will always require factual determinations. However, a discretionary standard is commonly used · to determine whether immunity exists in other contexts. In *Harlow v. Fitzgerald* (1982) 457 U.S. 800 [102 S.Ct. 2727, 73 L.Ed.2d 396], for example, the United States Supreme Court held that "government officials *performing discretionary functions* generally are shielded from liability for civil damages [for alleged constitutional violations] insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." (*Id.,* at p. 818 [102 S.Ct. at p. 2738], italics added.) Similarly, under California law, public officials had common law immunity for their *discretionary* acts, and now have such immunity by statute. (*Caldwell v. Montoya* (1995) 10 Cal.4th 972, 979-984 [42 Cal.Rptr.2d 842, 897 P.2d 1320]; Gov. Code, § 820.2.)[4]

Law enforcement officers enjoy no greater immunity. As the United States Supreme Court has observed, "[t]he common law has never granted police officers an absolute and unqualified immunity . . . ." (*Pierson v. Ray* (1967) 386 U.S. 547, 555 [87 S.Ct. 1213, 1218, 18 L.Ed.2d 288]; accord, *Falls v. Superior Court* (1996) 42 Cal.App.4th 1031, 1038 [49 Cal.Rptr.2d 908].) Thus, in actions alleging violations of constitutional rights under 42 United States Code section 1983, police officers enjoy the same qualified immunity afforded most public officials as a matter of common law, i.e., they are immune unless their conduct violated clearly established statutory or constitutional rights of which a reasonable person would have known. (*Ibid.*) There is no indication these fact-based standards have proved so unworkable as to require rejection of a similar standard for determining whether tribal officials enjoy immunity.

---

[4]This immunity has been applied to acts of law enforcement in the course of their ordinary duties. (See *Bratt v. City and County of San Francisco* (1975) 50 Cal.App.3d 550, 553 [123 Cal.Rptr. 774] [decision to pursue fleeing vehicle]; *Michenfelder v. City of Torrance* (1972) 28 Cal.App.3d 202, 206-207 [104 Cal.Rptr. 501] [failure to take action to prevent crime].) A recent decision, however, held officers were not immune under Government Code section 820.2 against claims for assault and battery and other torts in connection with a mistaken arrest. The court stated immunity under section 820.2 only covers " 'basic policy decisions.' " (*Bell v. State of California* (1998) 63 Cal.App.4th 919, 929 [74 Cal.Rptr.2d 541].)

■ Defendants have not persuaded us they should enjoy a degree of immunity not enjoyed by police officers at common law, not enjoyed by federal officials at common law (and only enjoyed by them under statute in view of the availability of a direct action against the government), and not enjoyed by state employees, including law enforcement officers. We therefore reject their contention that all they must show to establish immunity is that they acted within the scope of their authority. Rather, we conclude that, to qualify as "tribal officials" for immunity purposes, defendants also must show they performed discretionary or policymaking functions within or on behalf of the Tribe, so that exposing them to liability would undermine the immunity of the Tribe itself.

The only evidence as to the nature of defendants' official duties was a declaration stating that tribal law enforcement officers, including Mezzie, enforce tribal laws and provide security for all tribal lands, including tribal government offices, public reservation roads, the bingo and casino facilities, and the residential areas of the reservation.[5] This evidence established no more than the fact defendants performed ordinary law enforcement duties. No facts were presented to show that defendants performed discretionary or policymaking functions within or on behalf of the Tribe. There was no evidence, for example, that defendants had discretion to determine the appropriate response of the Tribe to on-reservation labor organizing activities such as those of plaintiffs. In fact, the record was silent as to what authority, if any, the Tribe had delegated to defendants in determining how to perform their law enforcement functions.

Under these circumstances, we cannot conclude defendants have established they are immune. We do not foreclose the possibility they may be able to do so on remand. As it stands, however, the dismissal of the action was premature and must be reversed.

### 2. *Scope of authority*

■ In addition to establishing that they qualify as tribal officials for immunity purposes, defendants must satisfy the second requirement for tribal official immunity, i.e., that the official must have acted within the scope of his or her official authority. Defendants do not dispute this requirement. However, they argue their conduct with respect to plaintiffs plainly fell within the scope of their authority as tribal law enforcement officers.

---

[5]Defendants Martire and Turner produced no evidence as to their official duties. However, by stipulating that the court's finding of immunity as to Mezzie applied equally to Martire and Turner, plaintiffs effectively conceded that the evidence produced by Mezzie applied to Martire and Turner as well.

Where an officer of a sovereign acts beyond his or her delegated authority, his or her actions "are considered individual and not sovereign actions. The officer is not doing the business which the sovereign has empowered him to do or he is doing it in a way which the sovereign has forbidden." (*Larson, supra*, 337 U.S. 682, 689 [69 S.Ct. 1457, 1461].) Therefore, immunity does not attach to such conduct.

Tortious acts are not necessarily exempt from immunity. (*Boisclair, supra*, 51 Cal.3d 1140, 1157.) Here, however, defendants produced no evidence as to the scope of their authority as tribal law enforcement officers. In particular, the record does not indicate whether defendants were authorized to use force or to detain or arrest visitors, and, if so, under what circumstances. (See *Suarez v. Newquist, supra*, 70 Wn.App. 827, 831-832 [855 P.2d 1200, 1203-1204] [tribal police officer had authority to transport, though not to arrest, nonmember of tribe].) Absent such evidence, there was no basis for concluding defendants acted within the scope of their authority for purposes of immunity.

A tribal official also may forfeit immunity where he or she acts out of personal interest rather than for the benefit of the tribe. (See, e.g., *Landreman v. Martin* (1995) 191 Wis.2d 787, 802-803 [530 N.W.2d 62, 67-68].) The complaint alleges defendants assaulted plaintiffs, in part, out of political motivations. That allegation at least raises a factual issue whether defendants acted for the benefit of the Tribe or merely for personal reasons. Indeed, the record does not indicate why defendants decided to confront plaintiffs. In particular, there is no showing that plaintiffs were violating any tribal law or policy at the time of the confrontation.

Defendants point out the complaint alleges that each of the defendants was the agent and employee of each of the remaining defendants, and in doing the acts alleged was acting within the course and scope of that agency and employment. However, the Tribe is not named as a defendant. Therefore, the allegation is not tantamount to an allegation that defendants acted within the scope of their authority as tribal officials. Even if it were so construed, plaintiffs' argument in this court adequately indicates their position is that defendants' alleged conduct amounted to intentional brutality that exceeded the scope of their lawful authority. That being the case, plaintiffs could amend the complaint to assert that theory in any event.

3. *State versus tribal law**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante*, page 1042.

## III

### DISPOSITION

The order appealed from is reversed. Appellants shall recover their costs on appeal.

Ramirez, P. J., and McKinster, J., concurred.

A petition for a rehearing was denied August 14, 2000, and the opinion was modified to read as printed above. Respondents' petition for review by the Supreme Court was denied October 18, 2000.