Joseph (Smokin' Joe) FRAZIER, and Rubin Mark, Inc., Plaintiffs,

v.

TURNING STONE CASINO; Oneida Indian Nation; Chief Ray Halbritter, as an individual and a representative of the Oneida Indian Nation; Edward Brophy, acting individually as a Boxing Promoter in connection with Turning Stone Casino and as a representative of the International Boxing Hall of Fame; Dwayne Stitzer, as an Individual and Marketing Manager, Turning Stone Casino; and the International Boxing Hall of Fame, an off-reservation entity, controlled by Edward Brophy, Defendants.

No. 5:02CV131(FJS/GJD).

United States District Court, N.D. New York.

March 31, 2003.

The Bullard Law Group, Rochester, New York, for Plaintiffs, H. Todd Bullard, of counsel.

Mackenzie Hughes LLP, Syracuse, New York, for Defendants Oneida Indian Nation, Turning Stone Casino, Chief Ray Halbritter, and Dwayne Stitzer, Peter D. Carmen, of counsel.

Zucker Spaeder LLP, Washington, D.C., for Defendants Oneida Indian Nation, Turning Stone Casino, Chief Ray Halbritter, and Dwayne Stitzer, William W. Taylor, III, Michael R. Smith, David A. Reiser, of counsel.

Hancock & Estabrook, LLP, Syracuse, New York, for Defendants Brophy and International Boxing Hall of Fame, Timothy P. Murphy, of counsel.

## MEMORANDUM–DECISION AND ORDER

SCULLIN, Chief Judge.

### I. INTRODUCTION

Plaintiffs' amended complaint asserts three causes of action, all of which are premised upon Defendants' alleged violation of New York Civil Rights Law §§ 50 and 51. The first cause of action, asserted against all Defendants, asserts that Defendants injured Plaintiff Frazier by misappropriating his image and likeness for advertising and promotional purposes in violation of §§ 50 and 51 of New York Civil Rights Law. The second cause of action, asserted against all Defendants, asserts that Defendants injured both Plaintiffs as a result of the same conduct charged in the first cause of action. The third cause of action, asserts a claim against Defendants Halbritter, Stitzer and Brophy (collectively "the individual Defendants"), alleging that they "acted in concert and by agreement to misappropriate the Plaintiff's image and likeness for commercial gain ... [and that their] agreement to misappropriate Plaintiffs [sic] Smokin Joe's Image was outside of each respective Individuals' [sic] scope of tribal duties." *See* Amended Complaint at ¶¶ 55, 57. Plaintiffs seek monetary, declaratory, and injunctive relief.[1]

---

1. Specifically, Plaintiffs seek the following relief: (1) a declaration that Defendants' conduct violated §§ 50 and 51 of New York Civil Rights Law; (2) $7,000,000 in damages for Plaintiff Frazier on the first cause of action; (3) $9,000,000 in punitive damages for Plaintiff Frazier for Defendants' wilful and malicious conduct; (4) an order that Defendants account to Plaintiffs and tender to Plaintiffs, as compensatory and exemplary damages, the sum that Defendants gained by unjustly enriching themselves through their misappropriation of Plaintiff Frazier's image and likeness and an order that Defendants disgorge all profits and financial gains they obtained through the commercial use of Plaintiff Frazier's image and likeness, particularly for the

Presently before the Court are two motions: (1) Defendants' motion to dismiss the amended complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure and for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and (2) Plaintiffs' motion for leave to amend their amended complaint pursuant to Rule 15 of the Federal Rules of Civil Procedure. After summarizing the facts that underlie this action, the Court will address each of these motions in turn.

## II. BACKGROUND [2]

On June 8, 2001, Jacquelyn Frazier–Lyde, the daughter of Plaintiff Frazier, engaged in a boxing match at the Turning Stone Casino ("Casino") with Laila Ali–McClain, the daughter to Mohammed Ali. The match was publicized as "Frazier–Ali/Ali–Frazier IV." Prior to the match, in March 2001, Defendants showed Ms. Frazier–Lyde a version of Plaintiff Frazier's image and likeness for use as a poster to promote the match for her approval. Ms. Frazier–Lyde told Defendants that she could not authorize the use of her father's image and likeness and that they would have to secure such authorization from Plaintiffs. Defendants did not secure such authorization but, instead, sought only to contract with Plaintiff Frazier for his personal appearance at the match. Defendants were advised that Plaintiff Frazier would not be present at the Casino during

the June 8, 2001 boxing event in any capacity.

Without Defendants' prior knowledge, Plaintiff Frazier attended the June 8, 2001 event as a member of the audience to support his daughter. During the event, Plaintiff Frazier entered the casino area of the Casino's main building and saw that his image and likeness had been superimposed on the surface of certain "high roller" gaming tables. The same image and likeness appeared on programs, leaflets, mailings, souvenirs and other party favors that Defendants provided to high rollers and other preferred gambling customers to induce them to attend and to participate in the Casino's gambling activities during and around the time of the June 8, 2001 boxing event. The unauthorized use and display of Plaintiff Frazier's image and likeness occurred on a systematic, continuous, and daily basis from about March 1, 2001, through September 30, 2001, as part of Defendants' marketing and promotion of the June 8, 2001 "Frazier–Ali/Ali–Frazier IV" event.

Plaintiff Frazier had not previously been associated with gaming or gambling activities, had never used his name, likeness or image in connection with the advertising and/or promotion of such activities except at a charitable fund raiser, and during the past two years had rejected an overseas on-line business opportunity involving endorsement of commercial gambling because it required the use of his name and likeness in connection with a commercial

period of March 1, 2001, through September 30, 2001; (5) a preliminary and permanent injunction, enjoining and restraining Defendants from any use of Plaintiff Frazier's likeness and image at the Casino or at any place or location or for any other purpose without Plaintiff's prior written consent and any future use of Plaintiff Frazier's likeness and image at any of Defendants' casino facilities or at any other location throughout the world without Plaintiff's prior written consent; (6)

an order instructing Defendants to release to Plaintiffs any and all photographs, pictures, portraits, negatives, facsimiles, and other pictorial portrayals of Plaintiff Frazier which are presently in their possession or control; and (7) reasonable attorneys' fees and costs.

2. For purposes of these motions, the Court accepts, as true, Plaintiffs' rendition of the facts that underlie this action.

gambling activity. As "a person of Christian faith" Plaintiff Frazier has suffered extreme emotional damage and compensatory loss because Defendants' conduct has "irreparably damaged his reputation, distorted the public image he has established for himself, exploited and abused his property rights in himself and his image and offended his personal sensibilities." *See* Amended Complaint at ¶ 42.

Based upon these facts, Plaintiffs assert that Defendants' unauthorized use of Plaintiff Frazier's image and likeness on the gaming tables and on leaflets, programs, mailings and party favors violated §§ 50 and 51 of New York Civil Rights Law and that Defendants undertook the improper use of the image and likeness knowingly, intentionally, maliciously, and solely for Defendants' exclusive advertising and marketing benefit and for their commercial and financial gain.

## III. DISCUSSION

### A. Subject matter jurisdiction—in general

A court must consider a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure before any other motion because a finding that the Court lacks jurisdiction would render all other objections and defenses moot, including the defense of tribal sovereign immunity. *See Rhulen Agency, Inc. v. Alabama Ins. Guaranty Ass'n*, 896 F.2d 674, 678 (2d Cir.1990) (citations omitted); *Ninigret Dev. Corp. v. Narragansett Indian Wetuomuck Hous. Auth.*, 207 F.3d 21, 28 (1st Cir.2000) (citation omitted).

"Federal courts are courts of limited jurisdiction." *Perpetual Sec., Inc. v. Tang*, 290 F.3d 132, 136 (2d Cir.2002). Under Article III of the United States Constitution, a district court has "jurisdiction to hear cases in which there is a federal question and cases based on the

diversity of citizenship of the parties." *Id.* (citations omitted). " '[P]arties cannot confer subject matter jurisdiction where the Constitution and Congress have not. The absence of such jurisdiction is non-waivable[.]' " *Id.* (quotation omitted).

In the present case, Plaintiffs assert that this Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a). They also assert that this Court has federal question jurisdiction over this action pursuant to 25 U.S.C. § 233 and 28 U.S.C. §§ 1330, 1331, 1360, 1362 and 1605. The Court will examine each of these arguments in turn.

### B. Federal question jurisdiction

#### 1. 28 U.S.C. § 1331

" 'Federal question jurisdiction exists where a well-pleaded complaint "establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a *substantial question of federal law*." ' " *Perpetual Sec.*, 290 F.3d at 137 (quotation omitted). "When deciding whether federal question jurisdiction exists, [a court] must proceed prudently and make pragmatic distinctions between those allegations, if any, that raise substantial questions and those that do not." *Id.* (citation omitted). In doing so, the court examines " 'the nature of the federal question raised in [each] claim to see if it is sufficiently substantial to warrant federal jurisdiction.' " *Id.* (quotation omitted).

Section 1331 provides that district courts have "original jurisdiction of all civil **actions arising** under the Constitution, laws or treaties of the United States." 28 U.S.C. § 1331 (emphasis added). As the Supreme Court has noted "a 'suit arises under the law that creates the cause of action.' " *Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 850–51, 105 S.Ct. 2447, 85 L.Ed.2d 818

(1985) (quoting *American Well Works Co. v. Layne and Bowler Co.,* 241 U.S. 257, 260, 36 S.Ct. 585, 60 L.Ed. 987 (1916)).

 In the present case, Plaintiffs argue that "federal question jurisdiction" exists under 28 U.S.C. § 1331 because the case presents questions concerning tribal immunity and the impact upon tribal immunity of certain federal statutes. However, it is clear from Plaintiffs' amended complaint that all three causes of action are created by, and arise under, New York Civil Rights Law §§ 50 and 51. The fact that the Court must review federal statutory and case law to determine whether Plaintiffs may pursue their state law claims against Defendants in federal court does not transform Plaintiffs' action from one arising under New York law into one arising under federal law. *See generally Oklahoma Tax Comm'n v. Graham,* 489 U.S. 838, 841–42, 109 S.Ct. 1519, 103 L.Ed.2d 924 (1989). Moreover, despite Plaintiffs' arguments to the contrary, the mere presence of a tribal sovereign immunity defense does not, in and of itself, "convert a suit otherwise arising under state law into one which, in the statutory sense, arises under federal law." *Id.* at 841, 109 S.Ct. 1519 (citation omitted). Accordingly, the Court concludes that § 1331 does not provide a basis for this Court to assert subject matter jurisdiction over this action.

### 2. Foreign Sovereign Immunity Act

 Plaintiffs also invoke the Foreign Sovereign Immunity Act as a basis for federal question jurisdiction. This Act provides, in pertinent part, that "[a] foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case ... in which the action is based upon a commercial activity carried on in the United States by the foreign state[.]" 28 U.S.C. § 1605(a)(2). It is well-established, however, that an Indian tribe is not a foreign state and that the Foreign Sovereign Immunity Act does not impair the immunity of Indian tribes. *See Kiowa Tribe of Okla. v. Mfg. Techs., Inc.,* 523 U.S. 751, 759, 118 S.Ct. 1700, 140 L.Ed.2d 981 (1998). For this reason, the Court concludes that neither 28 U.S.C. § 1605 nor 28 U.S.C. § 1330, which provides jurisdiction over foreign states where immunity has been lifted under the Foreign Sovereign Immunity Act, provides a basis for this Court to assert subject matter jurisdiction over this action.

### 3. Professional Boxing Safety Act

 Plaintiffs also invoke jurisdiction under the Professional Boxer Safety Act, 15 U.S.C. § 6301, *et seq.* Section 6309(d) of the Act provides that "[a]ny boxer who suffers economic injury as a result of a violation of any provision of this chapter may bring an action in the appropriate Federal or State court and recover the damages suffered, court costs, and reasonable attorneys fees and expenses." 15 U.S.C. § 6309(d). Neither Plaintiff states a claim as a "boxer" as that term is defined in this Act, i.e., "an individual who fights in a professional boxing match." 15 U.S.C. § 6301(1). Moreover, neither Plaintiff claims an injury arising as a result of a violation of any provision of this Act, which establishes and provides for enforcement of safety standards to "protect[ ] the welfare of professional boxers" and "to assist State boxing commissions to provide proper oversight for the professional boxing industry in the United States." 15 U.S.C. § 6302. For these reasons, the Court concludes that the Professional Boxing Safety Act does not provide a basis for this Court to exercise subject matter jurisdiction over this action.

### 4. Indian Gaming Regulatory Act

 The Indian Gaming Regulatory Act, 25 U.S.C. § 2701, *et seq.,* also does not

provide a basis for subject matter jurisdiction. This Act does not create a general private right of action for individuals or corporations, *see* 25 U.S.C. § 2710(d)(7)(A)(i)-(iii), nor have the courts created such a right. *See generally Hein v. Capitan Grande Band of Diegueno Mission Indians*, 201 F.3d 1256, 1260 (9th Cir.2000) (footnote omitted); *Hartman v. Kickapoo Tribe Gaming Comm'n*, 176 F.Supp.2d 1168, 1175 (D.Kan.2001) (citations omitted). Accordingly, the Court concludes that the Indian Gaming Regulatory Act does not provide a basis for this Court to exercise subject matter jurisdiction over this action.

### 5. Indian Civil Rights Act

▮ Under the Indian Civil Rights Act, 25 U.S.C. § 1302, *et seq.*, the only relief available in federal court is the writ of habeas corpus authorized in § 1303. *See Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 69–72, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978). Clearly, this Act does not form a basis for this Court to exercise subject matter jurisdiction over this action.

### 6. Other jurisdictional citations

▮ The other statutes that Plaintiffs cite in support of federal question jurisdiction do not assist them. Section 1362 of Title 28 is inapplicable because it pertains only to actions brought by an Indian tribe and depends upon the existence of a federal question. Both 28 U.S.C. § 1360 and 25 U.S.C. § 233 concern state court jurisdiction. Nothing in these statutes suggests that they create grounds for this Court to exercise federal question jurisdiction over this action or overrule the existing limits on federal jurisdiction.

In sum, the Court concludes that Plaintiffs have failed to establish any basis for this Court to exercise federal question jurisdiction over this action. Therefore, in order for this case to proceed in this Court, the Court's jurisdiction must be premised upon the parties' diversity of citizenship.

### C. Diversity jurisdiction, 28 U.S.C. § 1332

▮ Plaintiffs assert that this Court has diversity jurisdiction over this action under 28 U.S.C. § 1332(a)(1), which provides for federal jurisdiction in an action between citizens of different states. "Diversity jurisdiction requires, *inter alia*, complete diversity of citizenship between all plaintiffs, on one hand, and all defendants, on the second hand." *Ninigret Dev. Corp.*, 207 F.3d at 27 (citations omitted). "[A]n Indian tribe [, however,] is not a citizen of any state for purposes of diversity jurisdiction[.]" *Romanella v. Hayward*, 114 F.3d 15, 16 (2d Cir.1997) (per curiam) (citation omitted).[3] Thus, "a tribe is analogous to a stateless person for jurisdictional purposes." *Ninigret Dev. Corp.*, 207 F.3d at 27 *Id.* (citation omitted). Therefore, despite the presence of other diverse parties, "the presence of an Indian tribe [or a tribal entity] destroys complete diversity." *Id.* (citations omitted).

Based upon these principles, the Court cannot assert diversity jurisdiction over this action as long as the Oneida Indian Nation ("Oneida Nation") and the Casino are Defendants. This does not end the Court's injury, however, because Defendants have raised the defense of tribal sovereign immunity. If the Court finds that this defense applies to the Oneida

---

**3.** Nor does § 1332(a)(2), which provides for federal jurisdiction in an action between citizens of a State and citizens or subjects of a foreign state, provide a basis for diversity

jurisdiction in this case because it is well-established that an Indian nation is not a foreign state. *See Kiowa Tribe*, 523 U.S. at 757–59, 118 S.Ct. 1700.

Nation and the Casino, the Court would not have jurisdiction over this action with respect to those Defendants. Moreover, if the Court dismisses the Oneida Nation and the Casino from this suit and if the Court finds that these Defendants are not indispensable parties to this action, the Court would then be able to exercise diversity jurisdiction over this case because Plaintiffs are citizens of Pennsylvania and Defendants Halbritter, Stitzer, Brophy and the International Boxing Hall of Fame are citizens of New York.

### 1. Tribal sovereign immunity—Oneida Nation and the Casino

▉▉▉ Native American tribes are " 'domestic dependent nations' that exercise inherent sovereign authority over their members and territories." *Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Okla.*, 498 U.S. 505, 509, 111 S.Ct. 905, 112 L.Ed.2d 1112 (1991) (citation omitted). Absent a clear and unequivocal waiver by the tribe or congressional abrogation, the doctrine of tribal sovereign immunity bars suits for damages against a tribe, *see Santa Clara Pueblo*, 436 U.S. at 58, 98 S.Ct. 1670, including suits arising from its off-reservation commercial activities, *see Kiowa Tribe*, 523 U.S. at 758–60, 118 S.Ct. 1700, and the activities of a tribal entity such as the Casino. *See, e.g., World Touch Gaming, Inc. v. Massena Mgmt., LLC*, 117 F.Supp.2d 271, 274–76 (N.D.N.Y.2000); *Doe v. Oneida Indian Nation of N.Y.*, 278 A.D.2d 564, 565, 717 N.Y.S.2d 417 (3d Dep't 2000), *leave to appeal denied*, 96 N.Y.2d 716, 730 N.Y.S.2d 790, 756 N.E.2d 78 (2001) (citations omitted). Courts lack subject matter jurisdiction to determine claims barred by tribal sovereign immuni-

ty. *See Garcia v. Akwesasne Hous. Auth.*, 268 F.3d 76, 84 (2d Cir.2001) (citations omitted).

▉▉▉ In the present case, Plaintiffs do not contend that the Oneida Nation or the Casino has expressly or impliedly waived tribal sovereign immunity or that Congress has abrogated such immunity. Rather, Plaintiffs urge the Court to

find subject matter jurisdiction and limit the inequitable application of the sovereign immunity doctrine, in cases, where a tribe, which has attained the federal goals articulated in both case precedents and congressional enactments, has willfully engaged in wrongful, intentional conduct which violates the individual property rights of an innocent non-Indian citizen.

*See* Plaintiffs' Memorandum of Law at 3.

Plaintiffs' argument is without merit. This Court clearly lacks the authority to abrogate the long-recognized common-law immunity from suit that Indian tribes and tribal entities have enjoyed. *See generally Santa Clara Pueblo*, 436 U.S. at 58–59, 98 S.Ct. 1670.[4] Accordingly, the Court holds that it lacks subject matter jurisdiction over Plaintiffs' claims insofar as they are asserted against the Oneida Nation and the Casino and, thus, the Court dismisses these Defendants from the action. Having reached this conclusion, the Court must next determine whether the Oneida Nation and the Casino are indispensable parties to this action.

### 2. Rule 19—indispensable parties

▉▉▉ Defendants argue that the Oneida Nation and the Casino are indispensable parties to this action and that, therefore, their dismissal from this action, based

---

**4.** Indeed, the Supreme Court, while acknowledging that the rationale for tribal immunity "can be challenged as inapposite to modern, wide-ranging tribal enterprises extending well beyond traditional tribal customs and activi-

ties[,]" nevertheless declined to limit the applicability of the doctrine and "defer[red] to the role Congress may wish to exercise in this important judgment." *Kiowa Tribe*, 523 U.S. at 757–58, 118 S.Ct. 1700.

upon tribal sovereign immunity, dictates that the Court dismiss the entire action. An indispensable party is one

(1) [without whom] complete relief cannot be accorded among those already parties, or (2) [a person who] claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed.R.Civ.P. 19(a).

If such a person cannot be made a party to the action, Rule 19(b) directs the court to "determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable." Fed.R.Civ.P. 19(b). In making this determination, courts must consider the following factors:

first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or

other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Fed.R.Civ.P. 19(b).

▮ In reviewing the present case in light of Rule 19(a) and (b), the Court observes that a § 51 claim of invasion of privacy is in essence a tort claim.[5] *See Howell v. New York Post Co., Inc.,* 81 N.Y.2d 115, 122–24, 596 N.Y.S.2d 350, 612 N.E.2d 699 (1993); *Roberson v. Rochester Folding Box Co.,* 171 N.Y. 538, 64 N.E. 442 (1902). As such, it is well-established that generally a tort plaintiff is not required to proceed against all joint tortfeasors but may proceed against one, some or all of them. *See Bassett v. Mashantucket Pequot Tribe,* 204 F.3d 343, 360 (2d Cir. 2000) (citations omitted). Defendants do not articulate any interest of the Oneida Nation or the Casino which would be affected by the outcome of the claims against the other Defendants, nor is there anything in the record to suggest that any party would be prejudiced by permitting Plaintiffs to proceed against the other Defendants in the absence of the Oneida Nation and the Casino. *Compare id. with*

---

**5.** Although Plaintiffs bring their claims under both § 50 and § 51 of New York Civil Rights Law, it is clear that § 51 is the only one of the two sections that provides a private cause of action. Section 50 is penal in nature and provides that "[a] person, firm or corporation that uses for advertising purposes, or for the purposes of trade, the name, portrait or picture of any living person without having first obtained the written consent of such person, or if a minor of his or her parent or guardian, is guilty of a misdemeanor." N.Y. Civ. Rights Law § 50 (McKinney 1992). Section 51, on the other hand, provides, in pertinent part, that

[a]ny person whose name, portrait, picture or voice is used within this state for adver-

tising purposes or for the purposes of trade without the written consent first obtained as above provided may maintain an equitable action in the supreme court of this state against the person, firm or corporation so using his name, portrait, picture or voice, to prevent and restrain the use thereof; and may also sue and recover damages for any injuries sustained by reason of such use and if the defendant shall have knowingly used such person's name, portrait, picture or voice in such manner as is forbidden or declared to be unlawful by section fifty of this article, the jury, in its discretion, may award exemplary damages....

N.Y. Civ. Rights Law § 51 (McKinney Supp. 2003).

*Fluent v. Salamanca Indian Lease Auth.*, 928 F.2d 542, 547 (2d Cir.1991) (citations omitted) (holding that Seneca Nation is indispensable party to claims seeking to nullify agreement in which it has an interest). Accordingly, the Court holds that the Oneida Nation and the Casino are not indispensable parties to this action. Thus, in the absence of the Oneida Nation and the Casino, the Court has diversity jurisdiction over this action because, as noted *supra*, both Plaintiffs are citizens of Pennsylvania and Defendants Halbritter, Stitzer, Brophy, and the International Boxing Hall of Fame are citizens of New York, assuming, of course, that none of these Defendants are entitled to the protection of tribal sovereign immunity.

### 3. Tribal sovereign immunity—Defendants Halbritter, Stitzer, and Brophy

The protection of tribal sovereign immunity "extends to individual tribal officials acting in their representative capacity and within the scope of their authority." *Hardin v. White Mountain Apache Tribe*, 779 F.2d 476, 479 (9th Cir.1985) (citation omitted). Where, however, the subject of the lawsuit is not related to the performance of their official duties, tribal officials are amenable to suit. *See Puyallup Tribe, Inc. v. Dep't of Game of Wash.*, 433 U.S. 165, 173, 97 S.Ct. 2616, 53 L.Ed.2d 667 (1977). For example, in *Puyallup*, the Supreme Court upheld that part of a state court order that determined the off-reservation fishing rights of individual tribal members and officials under a state conservation law. Since the individual defendants had been acting as fishermen rather than as tribal government officers, the *Puyallup* court concluded that the tribe's sovereign immunity did not impair the state court's authority to adjudicate their rights. *See id.*

In their amended complaint, Plaintiffs allege that Defendant Halbritter "is the Chief Executive Officer of Oneida Nation Enterprises, which runs certain aspects of the Turning Stone Casino," and that Defendant Stitzer "is the Marketing Manager of Turning Stone Casino ... [and] was employed by and acted as an agent on behalf of, Defendant Turning Stone Casino." *See* Amended Complaint at ¶¶ 6, 8. Plaintiffs further allege that Defendant Brophy "acted as an independent contractor on behalf of, Defendant Turning Stone Casino," that he "acted individually and in the capacity of Executive Director of the International Boxing Hall of Fame," and that his operation of the International Boxing Hall of Fame was "beyond the scope of his duties as the Nation's agent." *See id.* at ¶¶ 7, 9

Finally, citing *Puyallup* and *Romanella*, Plaintiffs argue that Defendants Halbritter, Stitzer and Brophy are not protected by tribal sovereign immunity because the subject of this action is not related to the performance of their official duties.[6] Specifically, Plaintiffs assert that,

---

**6.** The Court notes that an individual who commits a tort in his capacity as a corporate officer or employee is subject to personal liability. *See Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 902 (2d Cir.1981) (citations omitted). The protections afforded by § 51 of New York's Civil Rights Law are in essence protections against the tort of invasion of privacy, *see Howell*, 81 N.Y.2d at 122–24, 596 N.Y.S.2d 350, 612 N.E.2d 699; thus, by analogy, one who violates § 51 may be held personally liable even if he was acting as a representative of a corporation. *See LaLumia v. Schwartz*, 23 A.D.2d 668, 669, 257 N.Y.S.2d 348 (2d Dep't 1965). Accordingly, allegations in the amended complaint concerning the employment or representative status of the individual Defendants; e.g., that Defendant Stitzer "was employed by and acted as an agent on behalf of, Defendant Turning Stone Casino," will not necessarily provide them with protection from individual liability in the

in violating Plaintiff Frazier's rights under §§ 50 and 51, the individual Defendants " 'acted beyond the scope of the authority that the [T]ribe could lawfully bestow' on them[.]" *Bassett*, 204 F.3d at 359 (citing *Doe v. Phillips*, 81 F.3d 1204, 1210 (2d Cir.1996) ("A government official does not have absolute immunity for acts that are manifestly or palpably beyond his authority ....") (internal quotation marks and citation omitted)).

In *Bassett v. Mashantucket Pequot Museum & Research Ctr. Inc.*, 221 F.Supp.2d 271 (D.Conn.2002),[7] the court addressed, in detail, the issue of the reach of tribal sovereign immunity to individual defendants. In *Bassett*, the plaintiffs met with representatives of the Mashantucket Pequot Tribe to discuss producing a film for the new Mashantucket Pequot Museum & Research Center about the 1636–38 Pequot War. One of the individual defendants, a member of the tribe and a director of the museum, had signed a "confidential disclosure agreement" in which she agreed that all information received from the plaintiffs was confidential and proprietary and was to be returned to the plaintiffs at their request. The other individual defendant, a projects director for the museum, advised the plaintiffs that the tribe intended to hire them to produce the film, contingent on the negotiation of a satisfactory contract and the tribe's acceptance of a script for the film.

On remand, the individual defendants argued that the plaintiffs' claims against them in their individual and official capacities as officers, representatives, and/or agents of the tribe should be dismissed as

barred by the doctrine of tribal sovereign immunity. In response, the plaintiffs argued that the individual defendants were not protected by tribal sovereign immunity because that immunity only extends to tribal officials cloaked with official policy-making authority and engaged in discretionary duties. Moreover, the plaintiffs argued that, even if the individual defendants could claim such "official" status, they were not entitled to immunity because they acted beyond the scope of the authority that the tribe could legally bestow on them.

The court began by reiterating the general principle that "tribal immunity may extend to ... 'individual tribal officials acting within their representative capacity and within the scope of their official authority.'" *Id.* at 277 (internal citation and other quotation omitted). The court then rejected the plaintiffs' argument that tribal immunity extends "only to high-level officers or officials who are performing governmental functions and exercising discretion." *Id.* (citing *Turner v. Martire*, 82 Cal.App.4th 1042, 99 Cal.Rptr.2d 587 (2000); *Otterson v. House*, 544 N.W.2d 64 (Minn.Ct.App.1996); *Baugus v. Brunson*, 890 F.Supp. 908, 911 (E.D.Cal.1995)). In this regard, the court noted that the district courts in this circuit have not held that such a limitation exists. *See id.* at 278 (citing cases). Based upon these cases, which "hold that tribal immunity extends to all tribal employees acting within their representative capacity and within the scope of their official authority[,]" the court held that tribal immunity applied to

---

event that they are not protected by tribal sovereign immunity.

**7.** The District of Connecticut had issued an earlier decision in this case, which, upon appeal to the Second Circuit, had been affirmed in part, vacated in part, and remanded. *See Bassett v. Mashantucket Pequot Tribe*, 204

F.3d 343 (2d Cir.2000). In its decision, the Second Circuit held, among other things, (1) that the tribe was immune from suit on copyright claims and (2) that the tribe was not an indispensable party to an action seeking to enjoin the Mashantucket Pequot Museum and Research Center from further infringing copyrights. *See id.* at 356–60.

the individual defendants in their capacities as executive director and projects director for the museum. *See id.*

The court then went on to address whether the plaintiffs could maintain a claim for damages against the individual defendants in their individual capacities. The court stated that "[i]n the tribal immunity context, a claim for damages against a tribal official lies outside the scope of tribal immunity only where the complaint pleads—and it is shown—that a tribal official acted beyond the scope of his authority to act on behalf of the Tribe." *Id.* at 280 (citations omitted). Thus, the court held that "a tribal official—even if sued in his 'individual capacity'—is only 'stripped' of tribal immunity when he acts 'manifestly or palpably beyond his authority....'" *Id.* (quoting *Bassett,* 204 F.3d at 359 (quoting *Doe,* 81 F.3d at 1210)).

In reaching this conclusion, the court rejected the plaintiffs' contention that their allegations that the individual defendants had tortiously interfered with the plaintiffs' contract, violated a statute, and used the plaintiffs' copyrighted script to produce a new film were sufficient to state a claim that the individual defendants had acted beyond the authority the tribe could lawfully bestow upon them. The court reasoned that "it is insufficient for the plaintiffs merely to allege that [the individual defendants] violated state and federal law in order to state a claim that [the individual defendants] acted beyond the scope of their authority; it would be tantamount to eliminating tribal immunity from damages actions because a plaintiff must always allege a wrong in order to state a claim for relief." *Id.* at 281 (footnote omitted). Instead, the court found that "to state a claim for damages against [the individual defendants], the plaintiffs would have to allege and prove that [the individual defendants] acted 'without any colorable claim of authority,' apart from whether

they acted in violation of federal or state law." *Id.* (citation and footnote omitted).

The present case is very similar to *Bassett.* Here, as in *Bassett,* Plaintiffs assert that the individual Defendants are not entitled to the protection of tribal sovereign immunity because their "agreement to misappropriate Plaintiffs [sic] Smokin' Joe's Image was outside of each respective Individuals' [sic] scope of tribal duties[,]" *see* Amended Complaint at ¶ 57, and, "[i]n addition, the Defendant Oneida Nation could not lawfully bestow upon the Individual Defendants Brophy, Halbritter, and Stitzer the authority to violate N.Y. State Civil Rights Law § 50 and § 51 by wilfully misappropriating the image and likeness of a U.S. Citizen for commercial gain and exploitation." *Id.* at ¶ 13(f).

Furthermore, Plaintiffs allege that Defendant Halbritter "is the federally recognized Representative of the Oneida Nation [and] is the Chief Executive Officer of Oneida Nation Enterprises, which runs certain aspects of the Turning Stone Casino." *See* Amended Complaint at ¶ 6. In addition, according to Exhibit "B" to the amended complaint, Defendant Halbritter signed the Professional Boxing Promotion Agreement in his capacity as "Nation Representative." *See id.* at Exhibit "B." In addition, Plaintiffs allege that Defendant Stitzer is "a member of the Oneida Nation ... [and] the Marketing Manager of Turning Stone Casino who during all relevant times was employed by and acted as an agent on behalf of, Defendant Turning Stone Casino." *See id.* at ¶ 8. Finally, Plaintiffs assert that Defendant Brophy "is a boxing promoter who during relevant times was contracted by and acted as an independent contractor on behalf of, Defendant Turning Stone Casino." *See id.* at ¶ 7. However, Plaintiffs also contend that "Brophy also acted individually and in the capacity of Executive Director of the In-

ternational Boxing Hall of Fame and as such utilized that entity to negotiate the promotion of the bout described herein ... [and that] Brophy's operation of the IBHF is beyond the scope of his duties as the Nation's agent." *Id.* at ¶¶ 7, 9.

■ Applying *Bassett* to these allegations, the Court concludes that Defendants Halbritter and Stitzer are entitled to the protection of tribal sovereign immunity, in all respects, for the actions taken in their official capacities. The Court also finds that Defendant Brophy is entitled to the protection of tribal sovereign immunity with respect to those actions he took as an agent of the Oneida Nation and the Casino. However, based upon the present record, the Court finds that Defendant Brophy is not entitled to the protection of tribal sovereign immunity for any actions he took as the Executive Director of the International Boxing Hall of Fame because there has been no showing that the International Boxing Hall of Fame is, or acted as an agent of, the Oneida Nation with respect to the subject matter of this action.

■ Moreover, with respect to Plaintiffs' claims for damages against Defendants Halbritter and Stitzer in their individual capacities, the Court finds that these claims must fail. Plaintiffs have done nothing more than allege that Defendants Halbritter and Stitzer violated state law and, thus, acted outside the scope of their authority. There are no allegations, however, that these Defendants acted "without any colorable claim of authority." *Bassett,* 221 F.Supp.2d at 281. To the contrary, throughout their amended complaint, Plaintiffs assert that these Defen-

dants were acting on behalf of the Oneida Nation and the Casino.

On the other hand, the Court concludes that Plaintiffs may proceed with their claims for damages against Defendant Brophy in his individual capacity to the extent that these claims are based upon his individual conduct and his conduct as Executive Director of the International Boxing Hall of Fame.[8]

■ Finally, with respect to Plaintiffs' claims for injunctive relief against the individual Defendants in their official capacities, such claims cannot be maintained insofar as they relate to their duties as officials of the Oneida Nation and the Casino. Although *Ex Parte Young* offers a limited exception to the general principle of state sovereign immunity and has been extended to tribal officials acting in their official capacities, it only allows an official acting in his official capacity to be sued in a federal forum to enjoin conduct that violates federal law. *See CSX Transp., Inc. v. New York State Office of Real Prop. Servs.,* 306 F.3d 87, 98 (2d Cir.2002) (quoting *Ex Parte Young,* 209 U.S. at 154, 28 S.Ct. 441, 52 L.Ed. 714). "However, a federal court's grant of injunctive relief against a state official may *not* be based on violations of state law." *Dube v. State Univ. of N.Y.,* 900 F.2d 587, 595 (2d Cir. 1990) (citing *Pennhurst,* 465 U.S. at 106, 104 S.Ct. at 911) (emphasis added). In the present case, the amended complaint only asserts violations of state law and, thus, the *Ex Parte Young* exception is inapplicable.[9] Accordingly, the Court dismisses Plaintiffs' claims for injunctive relief

---

8. The Court finds that, to the extent that Plaintiffs' claims are asserted against Defendant Brophy in his individual capacity for the acts he took as an agent of the Oneida Nation and the Casino, these claims fail because Defendant Brophy is entitled to the protection of tribal sovereign immunity for those actions.

9. The Court notes that, although prospective injunctive relief is not available to Plaintiffs in this forum, this holding does not preclude Plaintiffs from seeking the same relief in an appropriate forum, if there is such a forum available to them.

against the individual Defendants for acts taken in their official capacities as agents of the Oneida Nation and the Casino.[10]

## D. Plaintiffs' claims against the remaining Defendants

In addition to moving to dismiss Plaintiffs' amended complaint for lack of subject matter jurisdiction, Defendants also move for dismissal on the ground that Plaintiffs cannot state a claim against them under §§ 50 and 51 of New York Civil Rights Law nor, argue Defendants, can Plaintiffs maintain a claim for civil conspiracy against them.

A dismissal for failure to state a claim upon which relief can be granted is not warranted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (footnote omitted). "In making its assessment, the court must presume that the allegations in the complaint, and all reasonable inferences that can be drawn from them, are true." *Woodford v. Comm'y Action Agency of Greene Cty., Inc.,* 239 F.3d 517, 526 (2d Cir.2001) (citing *Lee v. Bankers Trust Co.,* 166 F.3d 540, 543 (2d Cir.1999)). The court seeks to determine not whether the plaintiff has a remote likelihood of prevailing on the merits, " 'but whether the claimant is entitled to offer evidence to support the claims.' "

*Chance v. Armstrong,* 143 F.3d 698, 701 (2d Cir.1998) (quotation omitted).

### 1. Preliminary matter—Plaintiff Rubin Mark, Inc.

██ Section 51 of New York Civil Rights Law provides a cause of action to "[a]ny person whose name portrait, picture or voice is used within this state for advertising purposes or for the purposes of trade without the[ir] written consent." N.Y. Civ. R. Law § 51 (McKinney Supp. 2003) (emphasis added). Plaintiff Rubin Mark, Inc. is a corporation and, therefore, has no right to sue under § 51. *See Dauer & Fittipaldi, Inc. v. Twenty First Century Communications, Inc.,* 43 A.D.2d 178, 180, 349 N.Y.S.2d 736 (1st Dep't 1973) (citations omitted). Thus, Plaintiff Rubin Mark, Inc. has not stated a claim upon which relief can be granted. Accordingly, the Court dismisses the complaint insofar as the claims are asserted on Rubin Mark, Inc.'s behalf.

### 2. Sections 50 and 51 of New York Civil Rights Law

The sole basis for Defendants' argument that Plaintiffs cannot state a claim against them under §§ 50 and 51 of New York Civil Rights Law is that "[f]ederal law, ..., generally forbids efforts by states to regulate the activity of Indian tribes." *See* Defendants' Memorandum of Law at 12 (citing *California v. Cabazon Band of Mission Indians,* 480 U.S. 202, 107 S.Ct. 1083, 94 L.Ed.2d 244 (1987)). Although Defen-

---

**10.** This, of course, would not affect Plaintiffs' claims for injunctive relief against Defendant Brophy in his official capacity as Executive Director of the International Boxing Hall of Fame at least based upon the current record. If during the course of this litigation, Plaintiffs establish that, for purposes of this case, the International Boxing Hall of Fame, was acting as an agent of the Oneida Nation and/or the Casino, and, therefore, was entitled to tribal sovereign immunity, then arguably the claims for injunctive relief against Defen-

dant Brophy in his official capacity as Executive Director of the International Boxing Hall of Fame would be barred for the same reasons as those against Defendants Halbritter and Stitzer.

Moreover, to the extent that Plaintiffs seek injunctive relief against Defendants in their individual capacities, *Ex Parte Young* has no applicability; nor does *Ex Parte Young* apply to claims for injunctive relief against private entities such as the International Boxing Hall of Fame.

dants acknowledge that "[w]ith respect to New York, Congress has enacted 25 U.S.C. § 233, which provides for limited civil jurisdiction of New York's courts with respect to matters involving individual Indians[,]" ... they argue that § 233 "does not authorize New York to regulate— through the New York Civil Rights Law— the Nation's conduct of Turning Stone Casino." *See id.* (internal citation omitted).

As discussed *supra,* the Oneida Nation, the Casino, and individual Defendants Halbritter and Stitzer are entitled to tribal sovereign immunity and, thus, the Court does not have subject matter jurisdiction with respect this action as it pertains to these Defendants. However, to the extent that Defendant Brophy and the International Boxing Hall of Fame acted independently and not as agents of the Oneida Nation and the Casino and, thus, are not entitled to the protection of tribal sovereign immunity, there is no reason that Plaintiff Frazier cannot maintain his claims under §§ 50 and 51 of New York Civil Rights Law against these two Defendants. Accordingly, the Court denies Defendants' motion to dismiss Plaintiff Frazier's §§ 50 and 51 claims against Defendants Brophy and the International Boxing Hall of Fame.

### 3. Defendant International Boxing Hall of Fame

In their amended complaint, Plaintiffs assert that

Defendant, International Boxing Hall of Fame ("IBHF") is upon information and belief, an entity organized under the laws of New York State and established by Co–Defendant Edward Brophy to promote and advertise boxing matches, as well as, to market boxing memorabilia and other boxing items. The IBHF is located on premises not considered

Indian Country or on the Oneida reservation. The activities and profits are gathered through activities with non-Indians. Brophy's operation of the IBHF is beyond the scope of his duties as the Nation's agent.

*See* Amended Complaint at ¶ 9.

In addition, Plaintiffs allege that "the image and likeness [of Plaintiff Frazier] was utilized on gaming tables. The promotion also involved the utilization of Defendant Brophy's position with the International Hall of Fame, and the Nation assisted in the City–to–City promotion of the bout across various state lines[,]" *see id.* at ¶ 11(b), [and] "Defendants, Turning Stone Casino, Oneida Nation, International Boxing Hall of Fame, Chief Halbritter, Brophy, and Stitzer, [sic] knowingly, intentionally, and maliciously, and without written consent of the Plaintiffs, made use of certain pictures, portraits, negatives, images and facsimiles of the individual Plaintiff Smokin' Joe, solely for the purpose of the Defendants' commercial financial gain." *See id.* at ¶ 22.

It is unclear from these allegations whether Plaintiffs are asserting that the International Boxing Hall of Fame was acting as an "agent" of the Oneida Nation and the Casino for all purposes or whether the International Boxing Hall of Fame, at least with respect to some of the claims, was acting independently and, thus, would not be entitled to the protection of tribal sovereign immunity. Based upon the current record, it is impossible for the Court to ascertain the relationship between the International Boxing Hall of Fame and the Oneida Nation and the Casino with respect to the conduct about which Plaintiffs complain. Accordingly, the Court denies Defendants' motion to dismiss Plaintiffs' claims against the International Boxing Hall of Fame.[11]

---

11. The Court notes that, if after discovery, it is determined that the International Boxing

Hall of Fame was, for purposes of all of the

#### 4. Plaintiffs' conspiracy claim

■ "New York law does not recognize an independent tort of conspiracy[.]" *World Wrestling Fed'n Entm't, Inc. v. Bozell*, 142 F.Supp.2d 514, 532 (S.D.N.Y. 2001). Nevertheless, " '[i]f an underlying, actionable tort is established, . . . plaintiff may plead the existence of a conspiracy . . . to demonstrate that each defendant's conduct was part of a common scheme.' " *Id.* (quoting *Sepenuk*, 2000 WL 1808977, at *6). To establish a claim of civil conspiracy, a plaintiff "must demonstrate the primary tort, plus the following four elements: (1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury." *Id.* (citation omitted).

■ In the present case, Plaintiffs assert that the three individual Defendants "acted in concert and by agreement to misappropriate the Plaintiff's image and likeness for commercial gain[,]" *see* Amended Complaint at ¶ 55, that each "received a pecuniary benefit as a result of their wrongful and intentional conduct in violating state law for commercial gain[,]" *see id.* at ¶ 56, that the "agreement to misappropriate Plaintiffs [sic] Smokin' Joe's Image was outside of each respective Individuals' [sic] scope of tribal duties[,]" *see id.* at ¶ 57, and that "[t]he conduct engaged in by the Individual Defendants was done intentionally, with knowledge and with the well thought out plan to escape any liability by invoking an archaic legal doctrine." *See id.* at ¶ 58. These allegations sufficiently plead a claim for civil conspiracy.

Whether the Court treats this conspiracy claim as a separate cause of action or simply as a claim within the other two causes of action is irrelevant. The fact is that Plaintiffs have pled the existence of a conspiracy based upon the underlying tort of invasion of privacy, as set forth in §§ 50 and 51 of New York Civil Rights Law. Accordingly, the Court denies Defendants' motion to dismiss the conspiracy claim with respect to Defendant Brophy.[12]

### E. Plaintiffs' motion to file a second amended complaint

Plaintiffs seek leave to amend their amended complaint to add two new claims: (1) a claim that Article VII of the 1794 Treaty of Canandaigua provides a basis for federal court jurisdiction and (2) a cause of action based upon the Fourteenth Amendment. Plaintiffs also resort to 25 U.S.C. § 233 once again.

■ Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend a complaint "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). Where, however, there is no merit to the proposed amendments, the court should deny the request to amend as futile. *See Health–Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir.1990) (citations omitted).

■ As noted *supra*, § 233 concerns state court jurisdiction and has no bearing on federal jurisdiction. Thus, the Court denies Plaintiffs' motion to amend their amended complaint as futile with respect to their reliance upon § 233 as a basis for federal question jurisdiction.

claims in this action, an agent of the Oneida Nation or the Casino, then it is likely that the International Boxing Hall of Fame will be entitled to the protection of tribal sovereign immunity.

**12.** For the reasons stated *supra*, Defendants Halbritter and Stitzer are entitled to the protection of tribal sovereign immunity; therefore, the only remaining individual Defendant in this action is Defendant Brophy.

Plaintiffs' reliance upon the 1794 Treaty of Canandaigua as a basis for federal question jurisdiction is also misplaced. To assert federal question jurisdiction over an action pursuant to 28 U.S.C. § 1331, the causes of action must "aris[e] under" the treaty. As noted *supra*, however, Plaintiffs' claims "aris[e] under" §§ 50 and 51 of New York Civil Rights Law. Therefore, the Court finds that the 1794 Treaty of Canandaigua does not provide a basis for subject matter jurisdiction under § 1331. Accordingly, the Court denies Plaintiffs' request to amend their complaint as futile with respect to their reliance upon this Treaty.

Alternatively, even if the Court were to find that Plaintiffs' claims arose under the 1794 Treaty of Canandaigua, the Court would have to determine whether this Treaty affects the tribal sovereign immunity enjoyed by the Oneida Nation and the Casino. Although Congress has the power to dispense with tribal sovereign immunity or to limit it, congressional exercise of such power " 'cannot be implied but must be unequivocally expressed.' " *Santa Clara Pueblo*, 436 U.S. at 58, 98 S.Ct. 1670 (quotation omitted). The treaty provisions upon which Plaintiffs rely do not unequivocally express congressional intent to dispense with or limit the immunity of the Oneida Nation or the Casino in any respect. Accordingly, the Court denies Plaintiffs' request to amend their complaint based upon the 1794 Treaty of Canandaigua on this ground as well.

Plaintiffs also seek to add claims based upon the Due Process and Equal Protection Clauses of the Fourteenth Amendment. Although Plaintiffs could rely upon the Fourteenth Amendment, through § 1983, to establish federal question jurisdiction, allowing Plaintiffs to amend their complaint to add due process and equal protection claims would be futile. First, the Fourteenth Amendment by its terms applies to States, not Indian Tribes. Indian Tribes are "exempt[ ] . . . from constitutional provisions addressed specifically to State or Federal Governments[.]" *Id.* at 56 n. 7, 98 S.Ct. 1670; *accord Poodry v. Tonawanda Band of Seneca Indians*, 85 F.3d 874, 881 n. 7 (2d Cir.1996) (citation omitted). Moreover, to the extent that Plaintiffs assert their Fourteenth Amendment claims against Defendants Brophy and the International Boxing Hall of Fame, these claims also fail. Section 1983, the procedural mechanism by which Plaintiffs could assert their Fourteenth Amendment claims, requires that the defendants in such an action be "state actors." Plaintiffs have not alleged, nor could they, that Defendants Brophy and the International Boxing Hall of Fame are state actors. Accordingly, the Court denies Plaintiffs' motion to amend their amended complaint to add these Fourteenth Amendment claims as futile.

## F. Next step in the proceedings

Based upon the Court's rulings, there remains the question of whether Defendants Brophy and the International Boxing Hall of Fame acted as agents of the Oneida Nation and the Casino with respect to all of the claims in the amended complaint or whether, at least to some extent, they acted independently of the Oneida Nation and the Casino. If, after discovery, Defendants are able to establish that an agency relationship existed between Defendants Brophy and the International Boxing Hall of Fame and the Oneida Nation and the Casino with respect to all of Plaintiffs' claims, then, arguably, Defendants Brophy and the International Boxing Hall of Fame, will be entitled to the protection of tribal sovereign immunity. Since they are the only remaining Defendants in this action, the remainder of the amended complaint would be subject to dismissal. If, on the

other hand, it is established that Defendants Brophy and the International Boxing Hall of Fame acted, at least in part, for their own benefit and not as agents of the Oneida Nation and the Casino, then Plaintiff Frazier could proceed with his claims under §§ 50 and 51 of New York Civil Rights Law against these Defendants. Since the issue of Defendants' relationship will determine whether Plaintiff Frazier may proceed with his claims against Defendants Brophy and the International Boxing Hall of Fame, the Court concludes that it is provident to limit discovery in this action initially to the issue of whether or not Defendants Brophy and the International Boxing Hall of Fame acted as agents of the Oneida Nation and the Casino with respect to all of Plaintiffs' claims and, therefore, are entitled to the protection of tribal sovereign immunity. Therefore, the Court instructs counsel to contact Magistrate Judge DiBianco's chambers within fifteen days of the date of this Order to schedule a conference to address the manner in which discovery will proceed with respect to the next phase of these proceedings.

## IV. CONCLUSION

After carefully considering the file in this matter, the parties' submissions, and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Defendants' motion to dismiss the amended complaint in its entirety against Defendants Oneida Indian Nation, Turning Stone Casino, Halbritter and Stitzer is **GRANTED** based upon the defense of tribal sovereign immunity; and the Court further

**ORDERS** that Defendants' motion to dismiss the complaint in its entirety on the ground that the Oneida Indian Nation and the Turning Stone Casino are indispensable parties is **DENIED**; and the Court further

**ORDERS** that Defendants' motion to dismiss the complaint with respect to all claims against Defendant Brophy to the extent that those claims are based upon his conduct as an agent of Defendants Oneida Indian Nation and Turning Stone Casino on the ground of tribal sovereign immunity is **GRANTED**; and the Court further

**ORDERS** that Defendants' motion to dismiss the complaint with respect to all claims against Defendant Brophy to the extent that those claims are based upon his individual conduct and his conduct as an agent of Defendant International Boxing Hall of Fame on the ground of tribal sovereign immunity is **DENIED**; and the Court further

**ORDERS** that Defendants' motion to dismiss the claims against Defendant International Boxing Hall of Fame on the grounds of tribal sovereign immunity is **DENIED**; and the Court further

**ORDERS** that Defendants' motion to dismiss the complaint for failure to state a claim with respect to all claims asserted on behalf of Plaintiff Rubin Mark, Inc. is **GRANTED**; and the Court further

**ORDERS** that Defendants' motion to dismiss Plaintiffs' civil conspiracy claim against Defendant Brophy is **DENIED**; and the Court further

**ORDERS** that Defendants' motion to dismiss Plaintiffs' §§ 50 and 51 claims against Defendants Brophy and the International Hall of Fame for failure to state a claim is **DENIED**; and the Court further

**ORDERS** that Plaintiffs' claims for prospective injunctive relief against the individual Defendants for the acts taken in their official capacities as agents of the Oneida Indian Nation and Turning Stone Casino are **DISMISSED**; and the Court further

**ORDERS** that Plaintiffs' motion to amend their amended complaint is **DE-NIED** as futile; and the Court further

**ORDERS** that, for purposes of the next phase of this litigation, discovery is limited to the issue of whether Defendants Brophy and the International Boxing Hall of Fame are entitled to the protection of tribal sovereign immunity with respect to the remaining claims; and the Court further

**ORDERS** that counsel are to contact Magistrate Judge DiBianco's chambers within fifteen days of the date of this Order to schedule a conference to address the manner in which discovery will proceed with respect to the next stage of the proceedings.

**IT IS SO ORDERED.**